APOSTEL CONSTRUCTION & LUMBER CO., Appellant, *v.* RADULOVICH, Respondent.

(No. 8416.)

and

ENDRESSE, Appellant, *v.* RADULOVICH, Respondent.

(No. 8417.)

(Submitted May 5, 1943.  Decided July 1, 1943.)

[139 Pac. (2d) 234.]

See 20 Cal. Jur. 96; 39 Am. Jur. 176.

*Mr. Earle N. Genzberger* and *Mr. Joe C. Giacoma,* for Appellants, submitted a brief; *Mr. Genzberger* argued the cause orally.

*Messrs. H. L. Maury, A. G. Shone* and *M. Baxter Larson,* for Respondents, submitted a brief; *Mr. Shone* argued the cause orally.

MR. JUSTICE ERICKSON delivered the opinion of the court.

This appeal is from orders granting new trials in two causes which have been submitted to us together.

The record discloses that John Radulovich was the owner of a house in the city of Butte. An automobile ran into and damaged the house. Radulovich, in negotiating a settlement for the damages with the insurance company, became acquainted with Jack Carter, who was an agent for the insurance company. Jack Carter expressed his willingness to buy the house and did obtain an option to purchase wherein it was agreed that the house would sell for $5,000. Radulovich was to receive $2,528.40 from the insurance policy and $2,471.60 from Carter personally. After giving this option, Radulovich left the city of Butte, leaving a renter in the damaged house, but making no arrangement for the repairs. He returned some weeks later and found that Jack Carter had assumed complete control of the house by ejecting the renter and by having the house repaired. He had put on new wall paper, installed plumbing, etc., which, in so far as the fixtures were concerned, put the house in better condition than before the damage occurred.

Jack Carter did not take up his option and the materialmen sought by these actions to foreclose a materialmen's lien on the house. Radulovich's defense was that he had nothing to do with the contract for the materials nor had he given anyone authority to so contract on his behalf.

The cause was tried and resulted in a judgment for the plaintiff materialmen. Upon the filing of affidavits, the court granted new trials in both cases.

The sole question before us is the sufficiency of these affidavits ██ ██ to move the discretion of the trial court in granting a new trial.

In examining this matter, we are governed by the rules laid down by this court in *Ebaugh* v. *Burns,* 65 Mont. 15, 210 Pac. 892, 894. It is there said: " 'The courts have therefore formulated rules within which they hold the particular application must be brought, or it will not avail. They are enumerated in *Berry* v. *State,* 10 Ga. 511, substantially as follows: (1) That the evidence must have come to the knowledge of the applicant since the trial; (2) that it was not through want of diligence that it was not discovered earlier; (3) that it is so material that it would probably produce a different result upon another trial; (4) that it is not cumulative merely—that is, does not speak as to facts in relation to which there was evidence at the trial; (5) that the application must be supported by the affidavit of the witness whose evidence is alleged to have been newly discovered, or its absence accounted for; and (6) that the evidence must not be such as will only tend to impeach the character or credit of a witness.' These rules have been uniformly followed by this court." (Citing cases.)

The affidavits presented are summarized as follows:

Mr. T. Tomich averred he would testify as to a conversation between Max Apostel, Jack Carter and John Radulovich, in which Jack Carter made a statement which indicated that Radulovich had nothing to do with the transaction. That statement was "John, as long as you get your money, you haven't anything to say about our business."

Mr. William Asanovich would testify that Max Apostel told him, in response to an inquiry regarding the house, that Jack Carter owned the house.

Mary Asanovich would testify to another statement made by Apostel. That statement is as follows: "No, John sold that property to Jack Carter, and I am doing some repair work for Jack Carter."

Violet Asanovich would testify that she heard Apostel make the same statement.

Bernice Maddock would testify that she overheard Carter say that he was going to employ Apostel to do some work on the

house. She would testify further that Carter hired Max Apostel in her presence.

Aileen Rebich would also testify that it was Jack Carter and his wife who planned the repairs and hired Apostel to do the work.

The evidence produced at the trial shows that the whole theory of the defendant's defense was that there was no privity of contract between himself and the materialmen or between an agent of his and the plaintiff materialmen. Radulovich testified as to statements made by both Carter and Apostel which are to the same effect as the affidavits—that it was Carter who employed Apostel, not Radulovich. One of the plaintiffs, Rudy Endresse, testified that it was Apostel who hired him, not Radulovich. Frank Reardon, a plumber, testified that Carter had hired him to do some "original" plumbing work and that he understood that Carter was going to buy the house. The tenant, Gladys Fernley, testified that Carter assumed control of the house and made them (the Fernleys) move out. Mr. Carl Shiner testified that Apostel and Carter tried to sell him the house and at the time of the negotiations the fact that Radulovich was the owner of the house was not disclosed to him.

We have summarized the pertinent part of defendant's evidence in order to compare it with the so-called new evidence. It is apparent that the affidavits present merely cumulative evidence and are not sufficient to warrant a new trial.

The orders appealed from are reversed and the cause is remanded with directions to enter orders denying new trials.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ANDERSON, MORRIS and ADAIR concur.

Rehearing denied July 12, 1943.