GUSTAFSON, ET AL., RESPONDENTS, v. TABER, ET AL.,
APPELLANTS.
No. 9020.
Submitted April 19, 1951. Decided July 11, 1951.
234 Pac. (2d) 471.

Messrs. Taylor and McKenna, Hamilton, for appellant C. J. Taber.

Mr. Edward T. Dussault, Missoula, for respondents.

Mr. J. D. Taylor, Mr. D. W. McKenna, and Mr. Dussault argued orally.

MR. JUSTICE BOTTOMLY:

Suit by plaintiffs against defendants for the price of a carload of lumber sold, shipped and received by defendants. Upon verdict and judgment for plaintiffs, defendant C. J. Taber appeals.

Appellant contends that the evidence is insufficient to support the verdict of the jury, that the jury disregarded the law as given by the court and that the court erred in refusing to give one of the instructions offered by defendants.

*The Facts.* In August 1947 John Taber, a brother of C. J. Taber, and Delmar Coombs, a son-in-law of John Taber, were engaged in buying and selling lumber; they needed capital in the firm which they were operating under the firm name of "Hamilton Lumber Sales Company." John Taber and C. J. Taber obtained a loan from the Ravalli County Bank at Hamilton, by which the firm was financed; the note to the bank was signed by John Taber and C. J. Taber. Under the arrangements made with the bank at the time this loan was made the checks on the account could be drawn by either John Taber or C. J. Taber.

In August 1947, John Taber and Delmar Coombs contacted the Grizzly Bear Lumber Company through Jim Gustafson, a member of that firm, and wanted lumber furnished to the Hamilton Lumber Sales Company. Not knowing the parties associated therewith, Gustafson obtained a credit rating of the Hamilton Lumber Sales Company and the members constituting that firm through the Western Montana Bank of Missoula. From such credit rating report plaintiffs ascertained that the defendants named in the complaint, i. e., John Taber, C. J. Taber and Delmar Coombs, were doing business as Hamilton Lumber Sales

Company. Thereupon the Grizzly Bear Lumber Company proceeded to ship lumber to them. The first carload was shipped the early part of September 1947, and was followed by four other carloads of lumber, all shipped via Northern Pacific Railway Company, uniform bill of lading, all of which were paid for by checks which were signed by one or more of the defendants. The sixth carload of lumber sold and shipped by plaintiffs to defendants on November 1, 1947, was under uniform bill of lading, Northern Pacific Railway Company, car initial PRR, Car No. 505061. The bill of lading accompanying this car of lumber, like all other cars of lumber shipped to defendants by plaintiffs, had attached thereto a tally sheet prepared by plaintiffs showing to whom shipped, the number of boards of each dimension, the board feet and the total price; the original bill of lading and tally sheet was retained by the railway company, one copy to the consignee and one copy to the consignor. The sale price of this sixth car of lumber was $1,732.83. No part thereof has been paid to plaintiffs.

Plaintiffs, prior to and at the time this action was commenced, were a co-partnership, composed of Frank Gustafson, Jim Gustafson, Ted Gustafson, and George Hutchings (George Hutchings since the action was started has retired from the firm), doing business under the firm name and style of Grizzly Bear Lumber Company, located in Missoula county, and were engaged in logging, sawmill operations and manufacturing and selling lumber.

There is no dispute that the plaintiffs shipped the designated car of lumber to, and the same was received by, the Hamilton Lumber Sales Company, and that no payment therefor has been made to plaintiffs.

The question here presented is—was defendant C. J. Taber, under the facts, evidence and applicable law, one of the individuals composing the firm or ostensible partnership which was doing business under the firm name and style of Hamilton Lumber Sales Company, and thereby liable as the jury found.

The Uniform Partnership Act. R. C. M. 1947, sec. 63-104, in part provides:

"(1) The rule that statutes in derogation of the common law are to be strictly construed shall have no application to this act.

"(2) The law of estoppel shall apply under this act.

"(3) The law of agency shall apply under this act."

R. C. M. 1947, sec. 63-208, provides:

"Partner by estoppel. (1) When a person, by words spoken or written or by conduct, represents himself, or consents to another representing him to any one, as a partner in an existing partnership or with one or more persons not actual partners, he is liable to any such person to whom such representation has been made, who has, on the faith of such representation, given credit to the actual or apparent partnership, and if he has made such representation or consented to its being made in a public manner he is liable to such person, whether the representation has or has not been made or communicated to such person so giving credit by or with the knowledge of the apparent partner making the representation or consenting to its being made: .

"(a) When a partnership liability results, he is liable as though he were an actual member of the partnership. * * *"

Here we have the formation of a firm to be known as the Hamilton Lumber Sales Company for the purpose of buying and selling lumber, C. J. Taber furnishing the working capital for the firm by executing a note to the Ravalli County Bank with John Taber as a co-signer. At first the money of the firm was to be drawn only by John Taber or C. J. Taber.

Delmar Coombs and John Taber in person contacted the Grizzly Bear Lumber Company to arrange to have that company ship lumber to their firm, the Hamilton Lumber Sales Company. They gave their phone number and the phone number of C. J. Taber and directed that when the cars were loaded to call either number at Hamilton for directions as to shipping. The first car of lumber was so shipped by plaintiffs to defendants and was paid for by check dated September 8, 1947, in favor of

plaintiffs drawn on Ravalli County Bank, in the sum of $1,-301.55, marked (lumber) signed by John Taber. The second car of lumber was paid by check on Ravalli County Bank, dated September 22, 1947, in favor of plaintiffs in the sum of $1,296.80 (For Car N. P. 1250) signed by C. J. Taber.

In October 1947 an account was opened in the Ravalli County Bank in the name of Hamilton Lumber Sales. This firm then had the said bank provide it with printed business or firm checks. Arrangements with the bank required a signature card for the firm account showing who was authorized to draw checks on said account. Under said arrangements and the signature card, the signatures of two members of the firm were necessary, i. e., defendant Delmar Coombs countersigned by C. J. Taber. C. H. Raymond, witness for defendants, testified that this firm account was carried by the bank until the new corporation was formed, having the same name that took it over; that the only time John Taber appeared was on the firm note with C. J. Taber.

Thereafter defendants ordered the third car of lumber from plaintiffs. This car was shipped to and paid for by defendants by check as follows:

"By Endorsement this Check when Paid is Accepted in Full Payment of the Following Account

| Date | Amount |
| --- | --- |
| 10/3 | $1,044.75 |

For C/L Lumber
Car No. C&NW47867
Total of Invoices
Less——% By Discount
Less

Total Deductions
Amount of Check
$1,044.75
To Ravalli County Bank
Hamilton, Montana
93-82"

Hamilton Lumber Sales          No. 110
Pine-Larch-Fir
Hamilton, Montana          October 3, 1947

Pay
To The
Order Of   Grizzly Bear Lumber Co.   $1,044.75
One Thousand Forty Four and 75/100 ... Dollars
Delmar Coombs

Signed
C. J. Taber

Countersigned

The fourth and fifth cars of lumber were ordered by defendants from plaintiff and paid for by check as follows:

"By Endorsement this Check when Paid is Accepted in Full Payment of the Following Account

| Date | Amount |
|------|--------|
| 10/21 | $1915.45 |
| NP 62091 | MP 8043 |

Total Invoices

Less——% Discount

Less——

Total Deductions——

Amount of Check $1,915.45

To Ravalli County Bank

Hamilton, Montana

93-82"

921

Hamilton Lumber Sales                No. 150
Pine-Larch-Fir
Hamilton, Montana        October 21, 1947

Pay
To The
Order of   Grizzly Bear Lumber Co.    $1,915.45
Nineteen Hundred & Fifteen & 45/100 * * Dollars
Delmar Coombs

Signed
C. J. Taber

Countersigned

Thereafter defendants ordered the sixth car of lumber from plaintiffs, which plaintiffs shipped to defendants November 1, 1947, under uniform bill of lading, Northern Pacific Railway,

232

car initial Penn 505061, being in the amount of $1,732.83. There is no question but that the Hamilton Lumber Sales Company received this car of lumber, nor is there any controversy as to the amount due the plaintiffs therefor.

Although defendant C. J. Taber denied that he had ever held himself out to plaintiffs as a partner or associate in any manner with the Hamilton Lumber Sales Company, or authorized anyone to do so, or was a partner therein, yet he testified on direct examination as follows:

"Q. Exhibits 4, 5 and 6, on which your name appears on the checks, I will ask you to examine those three checks and state if those were the signatures you placed on the checks at the instigation or recommendation of Mr. Raymond of the Ravalli County Bank? A. They are.

"Q. At that time, or any time, were you interested in any lumber that was being bought by the Hamilton Lumber Sales Company, or any other company other than the C. J. Taber Lumber Company? A. I was. * * *

"Q. Did you ever hear or learn of either Coombs or your brother holding you out or getting credit on the strength of your name? A. They telephoned from my place, that is John Taber did, and posed as C. J. Taber.

"Q. Did you ever authorize him to? A. No, I bawled him out for it.

"Q. Did you forbid him? A. I forbid him to do it.

"Q. Do you know the person to whom he was talking? A. I can't recall just now. It could have been with the Grizzly Bear Lumber Company. They were at my place a lot and used my telephone. * * *

"Q. I asked if you ever went to anyone that you knew and understood he held you out as a partner and informed them that you weren't connected with the Hamilton Lumber Sales Company? A. Fred Willard bought furniture and things and claimed to be a partner and got credit.

"Q. Did you notify him? A. I notified him. He tried to pose as a partner in the Taber Mill then.

"Q. The Taber Lumber Company? A. Yes."

Witness did not testify that he ever informed the plaintiffs that he was not a partner or member of the firm composing the Hamilton Lumber Sales Company. Defendant further testified:

"Q. Are you now a member of the corporation now known as Hamilton Lumber Sales? A. Yes.

"Q. That was incorporated subsequent to the dissolution of the Hamilton Lumber Sales Company that we are talking about? A. Yes, they took this firm name.

"Q. You are a director of it? A. I was a director, yes."

Mr. C. H. Raymond testified: "Q. The relation of creditor and debtor exists between you and Mr. C. J. Taber at the present time? A. It does. There was an interval after he paid off the Hamilton Lumber Sales notes that he was not a debtor."

One ordinarily countersigns an instrument for the purpose of authenticating the same. "Countersign" is the signature of a secretary or other officer to any writing signed by the principal or superior to vouch for the authenticity of it. Black's Law Dictionary, DeLuxe Edition.

The word "firm" is defined as a partnership; the group of persons constituting a partnership. The name or title under which the members of a partnership transact business. The word is used as synonymous with partnerships. Black's Law Dictionary, DeLuxe Edition.

The members of the firm or partnership, or apparent partnership, may be established by direct evidence but direct evidence is not necessary to establish a partnership. Silver v. Eakins, 55 Mont. 210, 175 Pac. 876. It may also be established by the admissions, acts or declarations of the party sought to be charged, known to and reasonably relied upon by the plaintiff. The act of one member or partner of a firm or partnership in line of the firm business is the act of all. So here the plaintiffs had a right, under all the facts in this case, to trust to appearances. One may become a partner of a firm as to a third person, without intending to, by words spoken or written or by conduct, and thereby become liable to those who have, on the faith thereof,

given credit to the actual or apparent firm or partnership. Any secret limitations of liability of a partner as between the partners themselves may be valid as to them, but as to third parties dealing with the firm, without knowledge thereof, such limitations do not apply. A partnership agreement need not be in writing and it may be express or implied. See: Simons v. Northern Pac. R. Co., 94 Mont. 355, 22 Pac. (2d) 609; Mechem, Elements of Partnership, 2d Ed., sec. 107, p. 96; Sugarman, Law of Partnership, secs. 46, 47, 48 and 49.

The question as to whether C. J. Taber was such a member ██ of the firm doing business under the name and style of Hamilton Lumber Sales Company, under the evidence, and instructions given, was for the jury to determine.

The jury found for plaintiffs. There is ample evidence to sustain the verdict and the judgment. The instructions given covered sufficiently the points covered in the offered and refused instruction. No prejudicial error appearing, the judgment is affirmed.

MR. CHIEF JUSTICE ADAIR, and ASSOCIATE JUSTICES METCALF, FREEBOURN and ANGSTMAN, concur.