THOMAS E. RODGERS AND BARBARA RODGERS, PLAIN-
TIFFS AND APPELLANTS, v. JOHN SAUNDERS AND JACK
FARRELL,DEFENDANTS AND RESPONDENTS.

No. 10746

Submitted September 17, 1964. Decided November 25, 1964.

396 P.2d 817

Robert M. Holter (argued), Holter & Heath, Bozeman, for appellants.

Morrow & Nash, James H. Morrow, Jr. (argued), Bozeman, for respondents.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an appeal by plaintiffs, Thomas E. Rodgers and Barbara Rodgers, his wife, from an adverse judgment entered in the district court of Gallatin County in an action seeking rent alleged to be due under the terms of a written lease, and a second claim for the balance due on an open account for service station products.

It appears from the record that the defendant, John Saunders, and his wife operated a dancing studio business in Bozeman, Montana.

On October 15, 1960, Saunders and one Farrell, also named as a defendant, negotiated a lease from plaintiffs for part of a building in Glasgow, Montana. This was a written lease for two years with a monthly rental of $135.00. Saunders had met Farrell and Farrell became interested in the dancing studio business. Farrell was to teach the Saunders method and Saunders was to lend his name to the studio. Farrell was to be exclusively in charge of the Glasgow studio, except that he would be coached in dance instruction by Saunders. Saunders received a percentage of the business, but Farrell was on his own. The studio was called "Saunders Starlite Dance Studio," and business checks were so printed. Farrell was the only one who ever used the checks. All advertising in Glasgow, though describing the studio as "Saunders Starlite Dance Studio," bore the name of Jack Farrell alone.

The May 15, 1961, rent was not paid, and in the Spring of 1961 Farrell abandoned the studio, left Montana and has not returned. Saunders and his wife returned from their annual summer employment in California, and along in October went to Glasgow to revive the business and take care of the students left over from the previous year, and they remained there with the sinking business until November.

On November 12, 1961, Saunders, Rodgers, and their wives were at a dancing class at the Elks Club in Glasgow. After the class they met in the lounge of the club and at that time a conversation took place which forms the basis for the alleged executed oral agreement terminating the lease contract. It is contended by plaintiffs that this conversation did nothing to alter the written terms of the lease. The defendant Saunders contends that the effect of the conversation was to relieve the defendants of further rent on the Glasgow studio. He asserts that defendants were to pay for the fall months and quit the premises by December 15, 1961, and the lease would be terminated. Checks for $135.00 each were paid to plaintiffs on November 12, 1961; December 1, 1961; and February 4, 1962. Also, the defendant Saunders removed the personal property, closed the studio, and returned the key by December 15, 1961. Defendant Saunders argues that the three payments were to cover October, November, and December pursuant to the oral agreement. Plaintiffs, on the other hand, have treated the payments as for May, June, and July of 1961, and claim delinquent rent from August 1961 to the original end of the lease in October of 1962.

The second claim by plaintiffs arises out of certain gasoline and other automotive products furnished Farrell at the plaintiffs' Glasgow service station. Plaintiffs contend that these products were furnished Farrell for his use in the business and that Saunders is obligated to pay for them. The basis for the claim is that they were partnership obligations incurred by Farrell.

The case was tried before the Honorable W. W. Lessley, District Judge, sitting without a jury. The court found the facts substantially as previously recited. The Conclusions of Law state that there had been a valid executed oral agreement terminating the lease by about December 10, 1961. It was also found that the defendants are not liable for the gasoline and automotive products.

The plaintiffs cite several specifications of error, which may be resolved by addressing the opinion to the following issues: Whether there may be an oral executed agreement terminating a lease for years; whether the evidence shows such an oral agreement to have been made and executed; whether the service station bill was a part of the oral agreement; and whether the partnership is liable for the bill instead of Farrell personally.

Concerning the first segment of these issues it is clear that in Montana there may be an executory oral agreement to terminate a contract. R.C.M.1947, Sections 13-907 and 13-903, subd. (5); West River Equip. Co. v. Holzworth Construction Company, 134 Mont. 582, 335 P.2d 298.

There are no Montana cases on this subject insofar as it relates to a lease for years, but in Goertz v. Wodzisz, 70 N.E.2d 776, 777, the Ohio Court of Appeals stated: "A written lease may be terminated by mutual agreement and as between the parties it is not necessary that such agreement to cancel be evidenced by a writing signed by the parties. The courts have uniformly held to this view."

The general rule may be stated as follows:

"An agreement to terminate [a lease] need not be express, but may be implied from the conduct and language of the parties, and a written lease, including one under seal, may be terminated by a parol agreement, provided such agreement is supported by a valuable consideration, and the surrender of the premises may provide such consideration." 51 C.J.S. Landlord and Tenant § 90, p. 656.

There is ample testimony in the record to support a

parol agreement to terminate the lease. The premises were surrendered and the payments were made. In addition, the conduct of the parties, as reflected by the evidence, is consistent with a parol agreement to terminate the contract and free both parties of their obligations.

The claim for service station charges should be clarified since the Conclusions of Law state that plaintiffs have no claim against defendants for the service station charges. Insofar as this ruling is intended to mean that Saunders is not obligated, the ruling is correct. However, we do not want the Conclusions of Law to infer that plaintiffs do not have a claim against the defendant Jack Farrell for these charges.

The record does not show that Farrell was served and it is apparent that he was not brought into the lawsuit. The gasoline charges are his debt, but the issue is whether Saunders may be held accountable for them as partnership obligations.

There is general agreement in the law that each partner may be considered agent for the partnership and thereby b i n d the partnership if he is acting within the scope of the partnership business. Gustafson v. Taber, 125 Mont. 225, 233, 234 P.2d 471. This is, in fact, manifested in the instant case by the fact that Saunders went to Glasgow when Farrell abandoned the business in order to take care of the dancing students still entitled to instruction. Farrell had obligated the partnership to these students because he was acting within the scope of the partnership business in making the contracts.

The record does not show that the gasoline purchases were purchased pursuant to partnership business. There is some indication that Farrell drove in and about the Glasgow area to promote the studio, but the gasoline purchased was not related to such tours. By the nature of the set-up, Farrell had control over the management of the Glasgow studio. He was free to use the studio account as his own. Purchase of items for the studio would, of course, obligate the partnership.

Since Farrell alone maintained the account he could use it to write checks for personal items as well. In a sense all items benefit the partnership as they tend to support Farrell, but this is not sufficient to make the partnership liable for all charge accounts. The purchase of gasoline, at best, tendered an incidental benefit to the partnership. It is generally agreed that,

"* * * a partner has no implied authority to make a purchase not within the scope of the business as ordinarily conducted, and, in the absence of authorization, the other partners will not be liable therefor unless they have adopted or ratified it or unless the purchase was made for the protection of the firm against a liability incurred." 68 C.J.S. Partnership § 154, p. 591.

And further:

"[T]he mere fact that a firm receives a benefit from a contract or transaction entered into by a partner in his individual capacity has been held insufficient to impose liability on the firm." 68 C.J.S. Partnership § 146b, p. 581.

Therefore, we feel the service station charges are not the liability of Saunders or of the partnership but of Farrell personally.

With due allowance for clarifications made herein, the judgment of the district court is affirmed.

MR. JUSTICES CASTLES, JOHN C. HARRISON, DOYLE and ADAIR concur.