ROBERT E. FISHER AND CORRINE FISHER, PLAINTIFFS AND RESPONDENTS, v. ROBERT J. MITZEL, DEFENDANT AND APPELLAT.

No. 11930.
Submitted Sept. 23, 1971.
Decided Nov. 22, 1971.
491 P.2d 186.

Sandall, Moses & Cavan, Billings, D. Frank Kampfe (argued), Billings, for defendant-appellant.

J. F. Meglen (argued), Billings, for plaintiffs-respondents.

MR. JUSTICE DALY delivered the Opinion of the Court.

This is an action involving a farm lease by plaintiff lessors against defendant lessee for damages. The action was tried to the court, sitting without a jury, in the thirteenth judicial district, Yellowstone County, on February 2, 1970; Hon. Robert H. Wilson, judge presiding. From a judgment for plaintiffs, defendant appeals.

Plaintiffs Robert E. and Corinne G. Fisher on November 10, 1965 executed a written lease covering 80 acres of their farm land in Yellowstone County in favor of defendant; the lease term to commence that day and to terminate March 1, 1969. The lease agreement was entitled ''Crop-Share-Cash Farm Lease'', a form provided by the Farmers Home Administration. The lease collaterally enabled defendant, Robert J. Mitzel, to qualify for and obtain a loan of $19,000 from the Farmers Home Administration to purchase a herd of milk cows.

In the lease defendant agreed to plant the land in barley, oats, wheat and corn in 1965 and thereafter, commencing in 1966, to plant the land in hay to be used as feed for his dairy cows. Plaintiffs agreed to furnish defendant with seed for the barley, oats, and corn crops for the 1965 fall planting but defendant was unable to use the seed because of adverse weather conditions. In 1966 defendant planted crops on the leased land, harvested them and delivered plaintiffs their share. Complying with the terms of the lease, defendant planted the land in hay in 1966 to provide a hay crop for livestock feed in 1967.

In the fall of 1966 cattle were permitted to come on to the leased land at a time when the ground was wet. The cattle trampled and damaged the new hay. Defendant testified that he had completed harvesting a corn crop on October 6, 1966, and the cattle entered upon the property shortly thereafter.

The morning of October 6, 1966, plaintiff Fisher phoned defedant's mother and told her to inform defendant that he wanted to talk to him. Defendant went to the Fisher home at approximately noon of that day, but Fisher was not there. Defendant had with him a check for plaintiffs' portion of the harvested corn crop. The testimony is in dispute as to what transpired at the Fisher ranch at that time. Defendant testified he delivered the check to Mrs. Fisher and informed her that he was going to terminate the lease. Mrs. Fisher denied this and later stated she was unable to "recall". At trial, Mrs. Fisher offered proof that she was working on October 6, 1966.

After Oct. 6, defendant no longer honored the lease. Plaintiffs resumed possession and operations on the land for the remaining portion of 1966, 1967, and thereafter. On September 28, 1967, plaintiffs' attorney wrote defendant a letter which demanded payment for deficiencies in defendant's performance under the lease in 1965, 1966, and 1967 in the amount of $6,600. Defendant went to see plaintiffs; he was informed by them that the lease was still in force and defendant was liable for alleged deficiencies in the productivity of the crops during those years.

Plaintiffs on April 9, 1968, filed this action for damages in the amount of $4,300.70. Defendant filed his answer and for an affirmative defense alleged defendant surrendered the lease on October 6, 1966; surrender was accepted by plaintiffs; and, the lease terminated on that date as a result.

After trial without a jury, the district court entered its findings of fact, conclusions of law, and judgment awarding plaintiffs damages in the amount of $1,400 and costs.

The district court denied plaintiffs recovery for damages claimed in some areas. The following findings of fact and conclusions of law of the trial court are those pertinent to this appeal:

"6. In accordance with the lease terms, defendant planted the leased land in hay in 1966 with the intention of growing a hay crop for livestock feed in 1967. In the fall of 1966, cattle were permitted to come on to the leased land at a time when the

ground was wet and severely damaged the new hay. These cattle were not the property of either the plaintiffs or the defendant and said cattle had no right to be upon said premises.

"7. The written lease between the parties provides in part as follows:

" 'Neither the owner or the tenant shall bring livestock that is not covered by this agreement on the farm during the period of the lease without express permission of the other party.

" 'The tenant will keep the * * * fences * * * in as good repair and condition as they are when he takes possession, and in as good repair and condition as they may be put during the terms of lease * * *.

" 'Tenants will prevent trampling of fields by stock and rooting by hogs when injury to the farm will be done.'

"8. That said cattle that came on the premises were there without the consent of the plaintiffs or the defendant. As a result of the damage, the hay crop in 1967, all of which was retained by plaintiffs, was far below what otherwise might have been produced, and loss to planted seed occurred.

"9. That the defendant failed to farm the leased lands in accordance with the terms of the lease during the year 1967, which action constituted a violation of the lease resulting in damage to the plaintiffs.

"10. By reason of the damage aforesaid, the plaintiffs suffered loss by reason of reduced crop for the year 1967, and loss and damage to planted alfalfa seed in the sum of $1,400.00. That this damage was as a direct result of a violation by the defendant of the terms of the lease agreement between the parties.

"11. That the lease between the parties continued in full force and effect through the crop year of 1967.

"CONCLUSIONS OF LAW

"1. Plaintiffs have failed to sustain the burden of proof with respect to damages for an inadequate crop yield resulting from a lease violation for the year 1966.

"2. Defendant has failed to prove by a preponderance of evidence that he cancelled the lease with plaintiffs in 1966 or 1967, and therefore the lease between the parties remained in full force and effect through the crop year 1967.

"3. That by reason of violation of the terms of the lease during the years 1966 and 1967, the defendant became indebted to the plaintiffs in the total amount of $1,400.00.''

Defendant filed exceptions to the court's findings of fact and conclusions of law, and a motion for a new trial. One ground for a new trial was newly discovered evidence, supported by an affidavit obtained from one Ervin Naasz, owner of the 15 head of cattle which were on the disputed leased land in the fall of 1966.

All motions were denied by the court on May 12, 1970, and defendant appeals from the final judgment, presenting the following issues on appeal:

1. That the court should have found that the lease had been surrendered by defendant and that the surrender had been accepted by plaintiffs.

2. That in any event there was no evidence of any damage to plaintiffs, as the result of any breach of the lease by defendant.

3. That the court should have granted a new trial on the question of responsibility for permitting cattle to graze on the leased land which caused damage to the crop.

Issue No. 1 is the principal issue—whether the lease in question was terminated. Both parties cite Rodgers v. Saunders, 144 Mont. 424, 396 P.2d 817 (1964), as the Montana case authority controlling here. So, it would appear there is no disagreement as to the law; therefore, the only argument presented is one of fact. Each party urges his position, under *Rodgers,* is supported by the facts in evidence. We must then only determine if there is sufficient credible evidence to support the findings of the trial court, even though the evidence is in dispute. Recognizing that the written lease is admitted and the burden of proof falls on the defendant to establish a termination, the

court found the defendant did not produce sufficient evidence to carry the burden. Upon examination of the record, we find sufficient credible evidence to support the finding of the trial court.

In Issue No. 2, defendant alleges there was no evidence of damages to plaintiffs as a result of any breach of the lease by defendant. Defendant's argument is somewhat difficult to follow in view of the finding by the trial court that the lease was in full force and effect through the crop year of 1967.

Plaintiffs contend that they were damaged by defendant's abandonment of the lease and failure to farm the leased land. Defendant argues that in view of the court's finding that damage to the hay crop was due to cattle on the wet land, he cannot be held responsible because under the printed portion of the lease providing for reservation of land and buildings *to the landlord* is *written* the words "grazing rights". Defendant contends he had a right to *assume* any cattle on the land belonged to the plaintiffs because of the grazing rights reservation and thus he could not complain. There is no merit in this argument. The district court in its finding No. 7 correctly found that the grazing reservation was in harmony with other provisions in the lease relating to the same subject and held the defendant responsible.

Although disputed, there is an abundance of evidence in the record on damages, and, of interest, is the fact that defendant and his witness, Chenoweth, supplied the evidence concerning damage to the alfalfa crop. From our review of the entire record, it would appear the court's reduction of plaintiffs' claim from $4,300 to $1,400 demonstrated a great deal of consideration for defendant's position and that the damages were equitably assessed.

The remaining issue—failure to grant a new trial on the issue of responsibility for the cattle on the leased land, has been in part covered in the foregoing discussion on damages.

Defendant contends that responsibility for the cattle was never at issue and only became an issue when the court imposed the responsibility on the defendant in its findings after trial. De-

fendant further contends that the affidavit of Ervin Naasz indicating Fisher put the cattle on the leased land was never controverted.

The record does not support this argument. As stated above, defendant introduced this issue of cattle and cattle damage by testifying that plaintiffs put the cattle on the leased land. Supporting evidence of their presence and damages was introduced by other defense witnesses. On rebuttal plaintiff Fisher denied he authorized the cattle to be put on the land or that they were his cattle. The court merely believed the testimony of plaintiff and a portion of the defendant's. From the evidence the court found that the lease was not rescinded and under the lease and facts presented it was defendant's responsibility to keep the crops free of damage of this sort.

Under Rule 59, M.R.Civ.P., defendant claims as ground for a new trial newly discovered evidence by virtue of the ex parte affidavit secured by the defendant after the court's judgment. The nature of the affidavit appears to be only cumulative in character, when considered in light of the record and as such has been held insufficient to authorize a new trial. Apostel Const. & Lbr. Co. v. Radulovich, 115 Mont. 43, 139 P.2d 234.

Additionally, defendant claims surprise but does not demonstrate any actions taken by him to move the court's discretion to consider this allegation. The matter of granting or refusing a new trial rests in the trial court's discretion and will not be disturbed on appeal unless there is shown a clear abuse of that discretion. We do not find such here.

The judgment of the trial court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES JOHN C. HARRISON, HASWELL and CASTLES concur.