HEMPSTEAD, Respondent, *v.* ALLEN, et al., Appellants.

No. 9141.

Submitted January 7, 1953.    Decided March 26, 1953.
As amended on Denial of Rehearing April 14, 1953.

255 Pac. (2d) 342.

Mr. Ralph J. Anderson, Helena, for appellants.

Mr. Horace J. Dwyer, Anaconda, and Mr. M. K. Daniels, Deer Lodge, for respondents.

Mr. Anderson and Mr. Dwyer argued orally.

MR. JUSTICE ANDERSON:

Defendants appeal from a judgment wherein it was decreed

that plaintiff have judgment against all of the defendants for the sum of $3,527.95, plus interest, and for costs.

The facts are that a lease was entered into on October 29, 1946, between the plaintiff, Austin T. Hempstead, trustee, and the defendant, John Z. Allen. The lease covered farm land in Powell county, Montana, and was for a period of sixteen and a fraction months. After the term of the lease defendant held over on the lease and did so for a period of fifteen months.

The plaintiff alleged in his complaint that the defendant, John Z. Allen, entered into the lease as agent for all of the defendants. The lease specifically names John Z. Allen as lessee and there is nothing appended to it which in any way suggests an agency or that John Z. Allen was acting in any capacity other than as an individual. The lower court held that the defendant, John Z. Allen, entered into the lease as agent for all of the defendants named in the pleadings and that the defendants were doing business as partners.

Defendants contend that the lower court was in error in finding a partnership relation existed.

Austin T. Hempstead testified that at the time the lease was being drafted in the office of his attorney, Horace J. Dwyer, Esq., John Z. Allen was present; that one or two of his sons were with him. During the direct examination of Mr. Hempstead it is noted that while talking about the discussion held in Mr. Dwyer's office, Mr. Hempstead constantly refers to John Z. Allen as *he*. Plaintiff Hempstead does not say that any statements made by John Z. Allen, with reference to the lease, were made by him as agent for any specific son or sons of his. In fact, as is apparent from the pleadings and the record, Mr. Hempstead did not know one son from the other, nor did he know the names of any of them. Mr. Hempstead did not know the names of or how many sons John Z. Allen had until after the facts were disclosed to him by the pleadings of the defendants. There is nothing in the record which legally could connect John Z. Allen's wife with a supposed partnership. There was no inquiry made by Mr. Hempstead or his lawyer, at the

time the lease was drawn, as to whom the supposed partners to the transaction were to be.

It is not likely that Mr. Hempstead's lawyer, Mr. Dwyer, would have drawn the lease document, naming John Z. Allen, as an individual lessee, if at the time Mr. Hempstead and Mr. Dwyer believed that John Z. Allen and others were to be, in fact, the lessees. The mere fact that no inquiry was made as to whom the parties were to be, and the additional fact that Mr. Hempstead's testimony constantly refers to John Z. Allen speaking in his individual capacity, and that Mr. Hempstead did not know the names of the alleged partners or how many persons constituted the partnership, would dispel any other logical conclusion than that of doing business with an individual.

"A third person seeking to enforce liability as a partner on ▮▮ one who has held himself out as such must exercise due diligence in ascertaining the facts, and must have a reasonable ground for believing that the person he seeks to hold as a partner was a member of the firm." 40 Am. Jur., Partnership, sec. 77, p. 183. Here the plaintiff did not know which ones, if any, of the boys were to be held nor did he make any inquiry.

John Z. Allen said he entered into the lease as an individual. Zadok R. Allen said he had no interest in the transaction other than he was a son of John Z. Allen and worked for him for his keep and spending money. Ruby O. Allen testified that she was the wife of John Z. Allen and she had no interest in the affairs of John Z. Allen other than as a wife. No connection with the alleged partnership was shown which in any way even suggests an interest in a partnership on the part of the other members of the Allen family who were named as defendants and against whom a judgment was entered in the district court.

It appears that Mr. Hempstead relies upon a statement that he said John Z. Allen made in Mr. Dwyer's office to show that a partnership was in existence, viz: "Mr. Allen said one of his boys, he had a Government loan—one or two of them, just one I think—and he was going to get a Government loan." The record indicates that this answer was given by Mr. Hempstead

for the purpose of showing his reliance on it in connection with the ultimate granting of the lease with an option to purchase the property here in question. Mr. Hempstead further testified: "Well, he [John Z. Allen] said they were going to purchase the land for he and the boys, he was fixing the boys up."

The question of payments on the ranch came up long after the lease was executed, and Mr. Hempstead said: "Well, Mr. Allen [referring to John Z. Allen] first intended getting the money from some Government office, Government agency, in Bozeman. He failed to do that, and then he said he was going to get the money to make the payments from that Government agency in Missoula." Counsel for plaintiff refers in his brief to the fact that one of the boys (not referring specifically to which one) was to get a G. I. loan. The testimony of the witnesses makes no reference to a G. I. loan, at least not so in the transcript submitted to this court.

Relying on these statements made by John Z. Allen, it is contended by Austin T. Hempstead that at least Zadok R. Allen, the boy present at the time the lease was executed, is estopped from denying the agent-principal relationship even though the estoppel was not pleaded in the complaint, citing Capital Lumber Co. v. Barth, 33 Mont. 94, 81 Pac. 994.

Without passing upon the question, we find from the record nothing to suggest whether Zadok R. Allen was, in fact, one of the boys about whom John Z. Allen allegedly was to fix up with a ranch or that it was he who would get a loan or that he was in fact a partner, or that he was to be a partner. It is true that Zadok R. Allen moved to the ranch with his father and it was shown that some time after the execution of the lease there was a sign on the ranch gate, "Allen & Sons." It was also shown that "Allen & Sons" was used by John Z. Allen after the execution of the lease agreement in other transactions. However, the actions of the Allens, as shown by the record, do not indicate a partnership. It is not shown that any one of the alleged partners, including Zadok R. Allen, accepted or derived

any partnership benefits from the business during the time they were on the ranch here in question.

"An agency is actual when the agent is really employed by the principal." R. C. M. 1947, sec. 2-105. "An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." R. C. M. 1947, sec. 2-106.

Here the plaintiff, by his own pleadings, claims an agency existed wherein John Z. Allen was leasing the premises for himself, his wife and his sons.

Plaintiff, having contended that there was a partnership, assumed the burden of establishing that there was one in fact, or that the partners had permitted themselves to be represented as such to him, and that on the faith of such representations, he had given the credit to the partnership. Bresee v. Smith, 73 Mont. 312, 237 Pac. 492.

From the record presented to this court, it does not appear that reliance or credit was extended by Austin T. Hempstead to any one other than the defendant, John Z. Allen, at the time that the lease was executed, or thereafter. The record fails to disclose that Austin T. Hempstead even thought of a principal-agency relationship at the time the original lease was executed.

The lower court erred in finding that the agency-partnership relation existed between the defendants and therefore the suit should have been dismissed against all defendants excepting John Z. Allen.

By the terms of the written lease, the lessee agreed to pay $400 upon execution of the agreement and to make improvements to the property of a value of not less than $1,200. Lessee further agreed to keep the premises insured, to pay the taxes and such costs and attorney fees as might arise from enforcing the terms of the lease.

Plaintiff alleges that except for the $400 paid plaintiff at the time the lease was executed, the lessee had not made improvements, paid for the insurance or paid taxes, as same were pro-

vided for by the lease. Plaintiff asked for judgment for the sum of $2,600 with interest from the dates of accrual of the same on the amount due each month, for $500 attorney fees, for $136 insurance premiums due, and for costs of suit.

The lower court found that plaintiff was entitled to judgment for rent owing in the amount of $2,630, taxes in the amount of $454.53, insurance premiums $136, attorney fees in the amount of $500; a total of $3,720.53, plus interest at the statutory rate of six per cent from the dates of the accrual of the respective amounts owing.

The judge of the trial court heard the evidence of all the witnesses in connection with the improvements which were to be done in accordance with the lease agreement and heard evidence in connection with the value of the improvements.

It is urged that the specific improvements made upon the property were of a much greater value than the trial judge found them to be. The lower court found that the lessee made improvements to the plumbing in the house. The evidence showed that such improvements necessarily had to be made because of a state of disrepair before the lessee could make proper use of the premises. For such improvements the lower court allowed $20. John Z. Allen and Mr. Andy Pfau, a contractor, testified that the work was worth from $200 to $250. The lower court found that in changing a channel of a ditch, $50 worth of improvements had been done. Mr. Andy Pfau said that this work was reasonably worth 75 cents to one dollar per running foot; the ditch was about 150 feet long.

Respondent testified that the lessee made no improvements whatsoever. There was no specific evidence adduced by the respondent to refute the values of the above improvements.

The lower court, having found that the two items referred to were in fact improvements as contemplated by the rental clause of the contract, allowed an inadequate consideration for the improvements and the record so shows.

The lessee further urges, and there was evidence to the effect, that many improvements of great value were made in excess of

584

those found to have been made by the court. Using the language of the lease: "And the lessee, for his successors and assigns, agrees to pay as rent for the above-mentioned premises and personalty, the sum of Four Hundred and no/100 Dollars ($400.00) cash upon the execution of this agreement, said $400 to apply on purchase price and further agrees to make improvements on said property of a value of not less than Twelve Hundred and no/100 Dollars ($1200.00). * * * And it is further expressly agreed between the parties hereto that the said lessee will farm said premises in a good and farm-like manner, and to raise the greatest amount of grain thereon the nature of the soil and season will permit, and further to break up and improve as much of the waste land as may be in a condition to plow."

The things which the lessee urges to be improvements, and therefore the value of same should be offset against the general improvements provided for in the first provision of the lease above quoted, are as follows: (1) The cutting of willows along the creek and around the ranch house, value $200 to $250; (2) removing beaver dams, value $150 to $200; (3) removing a log shack, value $50; (4) providing drainage ditches on fields, value $190 to $200; (5) opening up a spring for stock water, value $50; (6) work on road into building from county road, value $350 to $360; (7) moving a milk house, value $5; (8) discing and leveling a meadow, value $800. All of these items were found, by the trial court, not to be improvements and therefore could not be considered as offsets against the $1,200 of improvements provided by the lease.

Respondent testified that at the time of entering into the lease it was agreed that the $1,200 worth of improvements were to be done as follows: (1) Fencing, and, (2) changing the course of the creek lying somewhat west and south of the house, the latter being the improvement for which the trial court allowed $50. Nothing was allowed for fencing and the lessee did not urge that fencing was done. There were no other improvements that were contemplated by the respondent which could be offset against the $1,200. The lessee, John Z. Allen, testified

that all improvements of any nature were to be considered as offsets against the $1,200.

It is apparent that the lower court, by allowing one of the items as an improvement which respondent did not claim was contemplated by the contract, did not base its finding upon its belief or disbelief of either the lessee or the lessor but based its findings upon its interpretation of the written lease.

R. C. M. 1947, secs. 13-702 through 13-727, make up the rules under which courts are guided in the interpretation of written contracts. We have carefully examined these sections and the cases decided by this court in relation to them in an effort to reach our conclusions here.

R. C. M. 1947, sec. 13-713, provides: "A contract may be explained by reference to the circumstances under which it was made and the matter to which it relates."

The lower court, by its own findings, has disregarded the oral testimony of both the lessor and the lessee as to what were intended to be improvements as contemplated by the $1,200 rent provisions of the lease. We must therefore look to the written document itself for the meaning intended by the parties to this suit. As before stated, the lease was prepared by respondent's attorney. If any uncertainty exists in such lease contract, and it is apparent from the instrument that there is uncertainty, it is to be interpreted most strongly against the respondent who caused the uncertainty to exist. R. C. M. 1947, sec. 13-720; Hart v. Barron, 122 Mont. 350, 204 Pac. (2d) 797. We, therefore, hold that consideration of the other improvements, alleged to have been made by John Z. Allen, should have bene given by the lower court and the value of these items is a proper offset against the rents contemplated.

The record discloses that a personal inspection of the premises was contemplated by the presiding judge of the district court. However, there is nothing before us which indicates that such inspection was, in fact, made.

The cause is dismissed as to all the defendants except John Z. Allen and the cause is remanded to the district court with direc-

586

tions to re-examine the facts in regard to the improvements and to make such findings, conclusions and determination as are consistent with this opinion.

MR. CHIEF JUSTICE ADAIR, and ASSOCIATE JUSTICES BOTTOMLY, FREEBOURN and ANGSTMAN, concur.