No. 12251

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

STATE OF MONTANA ex rel BURLINGTON
Northern, Inc., a Corporation,

Relator,

-vs-

THE DISTRICT COURT OF THE FIRST JUDICIAL
DISTRICT OF THE STATE OF MONTANA, IN AND
FOR THE COUNTY OF LEWIS AND CLARK, THE
HONORABLE TRUMAN BRADFORD, JUDGE PRESIDING.

Respondents.

ORIGINAL PROCEEDING:

Counsel of Record:

For Relator:

Gough, Booth, Shanahan and Johnson, Helena, Montana.
Ronald F. Waterman argued, Helena, Montana.
Ward Shanahan appeared, Helena, Montana.

For Respondents:

Small, Cummins and Hatch, Helena, Montana.
Robert Cummins argued, and Carl Hatch appeared, Helena,
Montana.
Corette, Smith and Dean, Butte, Montana.
Keller, Reynolds and Drake, Helena, Montana.

Submitted: April 10, 1972

Decided: MAY 11 1972

Filed: MAY 11 1972

Thomas J. Kearney
Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an application for a writ of supervisory control seeking to direct the district court to enter summary judgment in favor of relator. On ex parte application this Court issued an order to show cause returnable on April 10, 1972. Return was made in the form of a motion to quash, a memorandum in support thereof, a brief and oral argument by counsel.

On March 17, 1972, the district court of the first judicial district, the Hon. Truman G. Bradford presiding, denied relator's motion for summary judgment in the case of Tonya G. McCausland v. The City of Helena, Montana, the Montana Power Company and Burlington Northern Inc., Civil No. 34969. Relator then filed its application here.

The suit in the district court arose from the electrocution death of Danny E. McCausland on May 5, 1971, near Silver City, Montana. McCausland was a Western Union lineman, a member of a crew removing Western Union telegraph lines between Helena and Great Falls. The lines were attached to relator Burlington Northern's poles and crossarms. Relator's communication lines normally carried between 6 to 48 volts, at the time of the accident.

The electrocution occurred when a Montana Power Company transmission line was pulled across relator's communication lines in Helena, near National Avenue at a point some seventeen miles distant from where McCausland was working. The "pulling" of the transmission line across the communication lines occurred when one John Tomaskie, a city of Helena employee, drove a truck and lowboy unit hauling a D-7 caterpillar tractor with an exhaust stack some fourteen feet high under a Montana Power Company service line, breaking a power pole which in turn pulled a transmission line loose for two spans, dropping or pulling the lines across the

- 2 -

relator's communication lines causing them to become electrified. The electrical power was transmitted over the communication lines to the area where McCausland was working.

The Montana Power Company's line was "affixed to an insulator held by the wooden pin, and fastened to the insulator by a separate wire holding the transmission line to the insulator". The transmission line was 32 feet above ground at the point of impact with relator's communication lines, which in turn were 24'6" above the ground, thus leaving 7'6" between the lines prior to the accident. The span between the poles supporting the transmission line which was pulled onto the communication lines was 155 feet. The transmission line carried 2400 volts to ground, 4160 phase-to-phase and impressed upon relator's communication lines 2400 volts.

Further east from the point of contact, a Montana Power Company service line attached to a building, the Bradford Machine Works. At its lowest point, where it connected to the building, the service line was 12'0" above ground; and it connected to the power pole at a height of 22'5". The power pole with this service drop, the pole broken, was the second power pole east of National Avenue.

On the morning of May 5, 1971, Tomaskie, the city employee, went to the city shops where he picked up a truck and lowboy unit. He drove to the city land fill dump and loaded a D-7 tractor which he hauled towards National Avenue where the city was placing a water line. Tomaskie drove north on National Avenue, across relator Burlington Northern's railway tracks. This crossing was close to Bradford Machine Works. Tomaskie testified by deposition that since National Avenue was "pretty well blocked off" with heavy equipment, he turned east and drove on a dirt road which paralleled relator's tracks and ran south of Montana Power Company's transmission line. A motor patrol, a heavy road

equipment vehicle, was on that road, so Tomaskie turned into an area between the Bradford Machine Works and Montana Power Company's pole, which was later broken.

Tomaskie stated that he was then "cutting" a corner and was driving near or over a footpath, running through a grassy area. As Tomaskie drove the truck under the service line, the fourteen foot high exhaust stack of the D-7 hit the line strung between the power pole and the building. Tomaskie did not see the line and continued to drive until the power pole broke. When the pole broke, it pulled one transmission line loose for two spans to the west, pulling it across relator's communication lines. The weather was clear, it was dry, and it was daylight. The police report identified the area as "private property owned by B.N. Railroad and Wm Bradford".

The foregoing facts are uncontradicted and come from discovery proceedings.

Plaintiff, as administratrix of the estate of Danny E. McCausland, brought action against the city of Helena, the Montana Power Company, and the relator, Burlington Northern, Inc., to recover damages for injury and death of decedent. Relator filed a motion to dismiss; an answer and crossclaim against the city of Helena; and a motion for summary judgment as against plaintiff. The motion for summary judgment was based upon the pleadings, depositions, answers to interrogatories and answers to requests for admissions. The motion was on the grounds that there was no genuine issue as to any material fact as to whether plaintiff could recover upon the theory of negligence which proximately caused decedent's death, against defendant and relator Burlington Northern, Inc. or, to state the grounds a little more clearly, that relator committed no act nor omitted to perform any act which was negligent as to decedent or that relator's acts in any

event were not the proximate cause of the injury and death of decedent.

A hearing was had by the district court. Plaintiff offered no new evidence nor, for that matter, any brief challenging the law as cited by the movant, relator here.

Plaintiff, in her amended complaint, alleged three acts committed by the relator, specifically: (1) that relator's granting of an easement to Montana Power Company was negligent; (2) that permitting the Power Company to erect power supply lines over relator's communication lines was negligent; and (3) that failure to notify the Power Company of a violation of city of Helena Ordinance No. 4-3-19 was negligent.

On the motion for summary judgment, relator contends that in each instance the record establishes as a matter of law that there was, in fact, no negligence committed and thus no genuine issue of material fact. Relator adds a further ground that, in any event, none of its acts were the proximate cause of decedent's death. Relator argues the intervening and superseding negligence of the city of Helena which, through its employee, drove a truck over a vacant field on private property with a D-7 tractor was the proximate cause. That the employee, charged by law with seeing the service wire strung between a private building and the power pole, nevertheless continued to drive causing the breaking and collapsing of the charged line across the communication line some two span lengths away.

As mentioned heretofore, at the hearing on relator's motion plaintiff did not come forward with any new evidence nor brief.

In Roope v. Anaconda Company, _____Mont._____, 494 P.2d 922, 29 St.Rep. 170, 174, this Court stated:

> "The burden of establishing the absence of any
> issue of material fact is on the party seeking
> summary judgment. Byrne v. Plante, 154 Mont. 6, 459
> P.2d 266, and citations therein. But where, as here,

- 5 -

> the record discloses no genuine issue as to any
> material fact, the burden is upon the party op-
> posing the motion to present evidence of a material
> and substantial nature raising a genuine issue of
> fact. Flansberg v. Mont. Power Co., 154 Mont. 53,
> 470 P.2d 263, and authorities cited therein."
> (Emphasis added)

Failure of the party opposing the motion to either raise or demonstrate the existence of a genuine issue of material fact, or to demonstrate that the legal issue should not be determined in favor of the movant, is evidence that the party's burden was not carried. Summary judgment is then proper, the court being under no duty to anticipate proof to establish a material and substantial issue of fact.

A writ of supervisory control properly issues where the trial court erred in refusing to grant a motion for summary judgment, where no genuine issue as to any material fact existed in the record. State ex rel. J.C. Penney Co. v. District Court, 154 Mont. 481, 465 P.2d 824. A writ is proper in the present case, as it is the sole means whereby relator Burlington Northern can avoid the substantial prejudice of being forced to defend a suit where, as a matter of law, neither negligence nor proximate cause is established in the record.

Plaintiff charges the railroad with three alleged acts of negligence, heretofore set out. Plaintiff bears the burden of establishing certain material elements to prevail in a negligence action. In Pickett v. Kyger, 151 Mont. 87, 100, 439 P.2d 57, the Court stated these elements to be:

"(1) A duty owing from defendant to plaintiff;

"(2) A breach of that duty by defendant;

"(3) Constituting proximate cause of

"(4) Injuries and damage to plaintiff."

Montana statutes adopt as governing the National Electrical Safety Code in all cases where no statutory provision is made for

the construction and installation of overhead electrical power lines, section 24-125, R.C.M. 1947, and this is true of "construction [of lines] where wires for power, heat, light, telephone, telegraph or signal cross each other."

The National Electrical Safety Code establishes minimum clearances for wires with a span length of not more than 250 feet for lines in a medium loading district. Montana is in a medium loading district. The span in question where the Montana Power Company's line crossed the Burlington Northern's communication line was 155 feet. The code established minimum clearances for crossing of wires carried on different supports. For open supply wires, 750 to 8700 volts, crossing a communication wire, the minimum clearance is 4', increased to 6' where the supply wire crosses a communication line within 6 feet horizontally of the communication pole. The Montana Power Company's supply line was 7'6" above the Burlington Northern's communication line.

An open supply line's minimum clearance to ground for lines carrying 750-15000 volts, crossing railroad tracks handling freight cars on top which men are permitted to work, is 28 feet. Over tracks not included above, the minimum is 20 feet, the same minimum required over public streets and driveways. Over spaces accessible to pedestrians only, the minimum clearance required is 15 feet. The Montana Power Company's supply line here was maintained 32 feet above ground.

The same section of the National Electrical Safety Code, Sec. 233A, Table 1, establishes minimums for communication lines, the only minimum standard which relator Burlington Northern is charged with meeting. The record establishes the Burlington Northern's communication lines were next to the Burlington Northern's tracks. Communication lines crossing railroad tracks, except where trainmen are working on top of freight cars, and on

public streets, are required to be maintained at 18 feet. Over spaces accessible only to pedestrians, the minimum is 15 feet, over driveways, 10 feet. The record establishes the Burlington Northern lines were maintained at 24'6".

The city of Helena's ordinance requires wires "securely fastened on supports" to be maintained 4 feet above telegraph wires. The Montana Power Company's pole was 7'6" above the Burlington Northern's communication lines.

The National Electrical Safety Code defines insulation as "separated from other conducting surfaces by a dielectric substance or air space permanently offering a high resistance to the passage of current." The National Electrical Safety Code requirement for vertical clearances for communications lines has been set forth above. The Burlington Northern's communication line exceeded the minimum distances required between lines and ground and the Montana Power Company's transmission line exceeded all minimum distances required between the supply line and the communication line. The distances were almost twice that required by the city of Helena's ordinance.

But, of course, discussion of the National Electrical Safety Code standards and the fact that they were not violated, ignores the important issue that in each instance, except as to clearance between the ground and the Burlington Northern's communication lines, compliance with the National Electrical Safety Code standards rested upon the Montana Power Company, not the Burlington Northern. Even assuming that a code requirement was violated, the record would still not contain any genuine issue of material fact which suggested Burlington Northern's negligence.

Even the city of Helena's ordinance, which plaintiff cites in her amended complaint, imposes no actual duty upon the Burlington Northern in the construction of lines above its wires. The ordinance,

- 8 -

No. 4-3-20, does grant an individual in relator's class the right to serve notice upon a utility for violation of the ordinance. However, the right is permissive only and does not apply in this instance in any event, as the Montana Power Company has not violated the ordinance. Further, the ordinance does not give the relator, Burlington Northern, any right to remove public utility lines in violation of the ordinance, but only gives the owner of the communication lines the right to serve notice of violation of the ordinance upon the public utility. The burden of actually putting the service line into compliance with the code rests upon the Montana Power Company, not the Burlington Northern.

The record shows that the Burlington Northern violated no statute, code, standard, or city ordinance. Does it support any allegation of negligence made against relator? Before discussing forseeability, it is proper to determine what precise duty was owed decedent by the railroad. The record establishes, without contradiction, that decedent was working on the property of relator. Decedent, a Western Union employee, was engaged solely in Western Union work---removing its telegraphic system wires strung between Helena and Great Falls.

The duty owed decedent by relator depends upon the category into which decedent falls with regard to his relationship with the railroad. The record negates any allegations that decedent was an employee of the railroad; likewise, it negates any allegations that decedent's employer, Western Union, was engaged in performing any actions for the railroad. Decedent and his employer were engaged solely in Western Union work. Was decedent then a business invitee of relator, or merely a licensee upon railroad property?

The distinction is important as it determines the duty owed McCausland. This Court said in Teesdale v. Anschutz Drilling Co., 138 Mont. 427, 433, 357 P.2d 4:

"In the case of Jonosky v. Northern Pac. Ry. 57 Mont. 63, 73, 187 P. 1014, 1015, this Court stated the distinction between invitation and license as follows:

"'* * * Much of the confusion arises from the failure of the courts to distinguish between a license and an invitation, and particularly between an implied license and an implied invitation. The distinction is not merely one of descriptive phraseology, but has its foundation in sound common sense. An invitation is inferred where there is a common interest or mutual advantage, while a license is implied where the object is the mere pleasure, convenience, or benefit of the person enjoying the privilege.'"(Emphasis added)

See also: Vogel v. Fetter Livestock Co., 144 Mont. 127, 137, 138, 394 P.2d 766; Blackman v. Crowe, 149 Mont. 253, 256, 425 P.2d 323.

To categorize an individual as an invitee of another, the record must show that there was some "common interest or mutual advantage" gained by the property owner. Where the evidence establishes only that the object of the individual's presence was the mere pleasure, convenience or benefit of the person enjoying the privilege, that person is merely a licensee.

The distinction is important, of course, because the duty owed to an invitee is different and much greater than the care owed to a licensee. In Vogel it was said that in an invitee-invitor relationship:

"* * * defendant owed plaintiff the duty of exercising reasonable or ordinary care, and to warn plaintiff of any hidden or lurking danger although defendant was not an insurer against all accidents and injuries to invitees."

A licensee, on the other hand, is owed a lesser duty. This Court in Nichols v. Consolidated Dairies, 125 Mont. 460,466, 239 P.2d 740, said:

"The duty owed to a licensee is to refrain from acts of wilful and wanton negligence." (Emphasis added)

Plaintiff's case fails to present any evidence of the failure of relator to refrain from acts of wilful and wanton negligence. Indeed, not only does the record fail to support

- 10 -

any finding of wilful and wanton misconduct on the part of relator, the complaint does not even make such allegation. But the record does support the contention that McCausland was a licensee, not an invitee of relator---his presence and that of the entire Western Union line crew on Burlington Northern property, was solely for the convenience and benefit of the Western Union Company. There are no facts from which this Court, or the district court, could have concluded that the Western Union line crew had some common interest with or performed some act of mutual advantage for the railroad.

Having established what the duty was---what facts are there to support any conclusion that the duty was breached? None!

The first alleged ground does not constitute negligence. Applying the appropriate standard of care to which relator must observe, the duty to refrain from acts of wilful and wanton negligence, it is clear that the grant of the easement did not breach any duty owed decedent.

Considering the third ground of alleged negligence, out of order, relator is not charged with violation of an ordinance relative to the construction of transmission lines above its communication line. But relator is charged only with a failure to inform the Montana Power Company of the alleged violation. The record does not establish any violation of the ordinance and the ordinance gives relator only the right to inform the Montana Power Company of a violation. The statute creates no duty, but establishes only a permissive right to inform the Montana Power Company of a violation. Thus no duty to act is established by the statute. Failure to serve notice, even assuming a violation of the ordinance, was not negligence.

Finally, plaintiff's second ground was that the Burlington Northern was negligent in allowing the Montana Power Company to

cross its communication lines with power transmission lines without protection against electrification. The second ground, much like the first, must be construed in light of the statutory power the Montana Power Company had to utilize eminent domain and acquire precisely this right---the right of crossing the railroad's communication lines with its electrical transmission system. Further, the record demonstrates that the Montana Power Company did comply with all statutory code and ordinance minimum requirements.

Accordingly, there were no genuine material facts establishing negligence. We need not go further into the second ground, that is, foreseeability and probable cause. It is clear the summary judgment should have been granted and relator, Burlington Northern, Inc., dismissed from the suit. It is so ordered.

_Wesley Castles_

Associate Justice

We Concur:

_James T. Harrison_

Chief Justice

_Frank I. Haswell_

_Gene B. Daly_

_John Conway Harrison_

Associate Justices.