No. 84-43

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

GAMBLE ROBINSON COMPANY,
a Corporation,

Plaintiff and Respondent,

-vs-

CAROUSEL PROPERTIES, et al.,

Defendants and Appellants.

APPEAL FROM:  District Court of the Fifth Judicial District,
In and for the County of Beaverhead,
The Honorable Frank Davis, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Zane K. Sullivan, Missoula, Montana

For Respondent:

John Warren; Schulz, Davis & Warren, Dillon,
Montana

Submitted on Briefs:  June 28, 1984

Decided:  September 13, 1984

Filed:

*Ethel M. Harrison*
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

This action was brought in the District Court of the Fifth Judicial District, in and for the County of Beaverhead, Montana, on an account due. Respondent received summary judgment for $4,414.76 plus interest and costs. Appellants contest the lower court's ruling, and ask this Court to grant summary judgment in their favor. We reverse and remand.

On June 20, 1978, Walter W. Deines, Alan M. Hart, Carroll M. Hart, Ray L. Ingalls and Harry M. Opsahl, all of Missoula, Montana, agreed to form a partnership called Crosswinds Enterprises. Article 1.4 of the Partnership Agreement set out the purpose of the partnership, ". . . the ownership and operation of one or more restaurants and any other businesses related thereto, and such other business as the partners shall determine." In addition, the partners, in Article 4.1 of the agreement, contemplated that ". . . the partnership intends to enter into a separate contract of employment with Harry M. Opsahl regarding the full time operation and management of the partnership's initial restaurant venture." Until then the Agreement gave Harry Opsahl the specific authority to manage the restaurant as a partner and employee, "which said authority shall include, but not be limited to the powers to . . . (ii) borrow monies for operating expenses of the partnership business . . . [and] (iii) expend sums for the payment of ordinary business expenses, purchase of inventory, supplies, or other consumables . . . " The Agreement otherwise limited all of the partners' authority, including Harry Opsahl's, to those specifically granted. Crosswinds

Enterprises filed a registration of trade name on June 16, 1978.

In July of 1978, Crosswinds Enterprises acquired real property in Dillon, Montana on which it intended to begin restaurant operations. A Notice of Purchasers Interest in the name of Crosswinds Enterprises, a partnership, was filed with the Beaverhead County Clerk and Recorder at that time.

Little apparently happened until March of 1979. On March 1, the five partners joined in amending the partnership agreement. The name of the partnership was changed to Carousel Properties, and the provision in the Agreement giving Harry Opsahl general managerial powers was deleted. The purposes clause of the partnership was not amended. On March 30, Carousel Properties filed notice with the Secretary of State that it was assigning all of its rights in its old name, Crosswinds Enterprises, to a corporation formed that same day. All five principals in the partnership were equal shareholders in the new corporation, which took as its name Crosswinds Enterprises. The purpose of the corporation was the "operation and management" of the Crosswinds Restaurant. That same day, the partnership also filed a notice of name change.

On April 1, 1979, the partnership (Carousel Properties) leased to the corporation (Crosswinds Enterprises) the real property it had aquired the year before. On June 1, 1979, Harry Opsahl entered into a written agreement with the corporation to be general manager of the Crosswinds Restaurant. The restaurant opened for business on June 9, 1979.

Sometime early that June, Ken Marsh, a sales

representative for respondent, Gamble Robinson Company, visited the Crosswinds Restaurant to solicit orders for bulk foodstuffs. Between June 11 and June 22, the restaurant ordered $582.15 worth of food from Gamble Robinson Company. The first order was billed to "Crosswinds Restaurant; Dienes, Opsahl, Hart and Hart," and was paid on July 14. All subsequent orders were billed the same way. In late June or early July, Ken Marsh and Harry Opsahl met to discuss the credit arrangement between Crosswinds and Gamble Robinson. The details of this conversation are unclear. Marsh has not testified, and Opsahl's recollection is equivocal at best. Gamble Robinson alleges that during this conversation, Opsahl represented to Marsh that the restaurant was owned and operated by a partnership. Regardless, what apparently came out of this conversation was a credit application that Marsh filed sometime in July with Gamble Robinson Company's branch manager. The application listed the restaurant's owner as a partnership of Dienes, Opsahl, Ingalls, Hart and Hart. It was not signed by Opsahl or any of the purported partners. A line of credit was approved and operations began on that basis.

In 1982, managerial and financial difficulties beset the restaurant. Harry Opsahl was fired as manager in April, and by October, Crosswinds was unable to pay its bills. The account with Gamble Robinson went unpaid from August 3 to October 16, when the line of credit was rescinded. Crosswinds then owed Gamble Robinson $4,414.96, the amount at issue in this action.

In January of 1982, Crosswinds Enterprises effected a bulk transfer of all of its corporate assets to Snowden

Enterprises, Ltd. Snowden was a newly formed corporation with only one shareholder, Iris Hart, the wife of Carrol Hart (one of the partners and shareholders in the other two entities). Gamble Robinson Co. received a notice of bulk transfer, and indicated in a letter dated January 27, 1982 that it would file a claim as a corporate creditor. Following the bulk transfer, Carousel Properties transferred the lease from Crosswinds Enterprises to Snowden. On February 18, 1983, Crosswinds Enterprises filed a petition in United States Bankruptcy Court. Gamble Robinson, an unsecured creditor, received nothing.

On February 24, 1983, Gamble Robinson filed this action for the unpaid account against "Crosswinds Enterprises, a partnership consisting of Walter W. Dienes, Alan M. Hart and Ray L. Ingalls, also known as Crosswinds Restaurant." Harry Opsahl was not named in the original complaint, apparently because he had left the partnership at the same time he was fired from his post as manager. Defendant moved to dismiss under the name "Carousel Properties, a partnership formerly known as Crosswinds Enterprises, a partnership consisting of Walter W. Dienes, Harry Opsahl, Allan W. Hart, Carrol M. Hart and Roy L. Ingalls; also known as Crosswinds Restaurant." The motion to dismiss was denied, and it is under that name this action has proceeded. Following a hearing, the Honorable Frank E. Blair, District Judge, authorized a writ of attachment to issue against Carousel Properties.

This cause was heard on December 8, 1983, before the Honorable Frank M. Davis, District Judge, on cross-motions for summary judgment. At the hearing, Carousel Properties

withdrew its motion and Gamble Robinson's motion was then granted. Judge Davis found this case to be appropriate for summary judgment because there were no genuine issues of material fact that the debt at issue belonged to the partnership, Carousel. This ruling was based upon: (1) the stated general purpose of the partnership; (2) the apparent authority of Opsahl to bind the partnership; (3) Opsahl's alleged representation to Marsh that he was dealing with a partnership; (4) the record title of the real estate was in the partnership name; and (5) the deceptive similarity of the various entities. The court also intimated that, although it was not strictly necessary for its decision, this case was ripe for the application of the doctrine of piercing the corporate veil.

Appellant presents the following issues on appeal:

(1) Was summary judgment properly granted?

(2) Did the District court err in its analysis of the record in determining the facts before the court?

(3) Is the doctrine of piercing the corporate veil applicable?

## Was Summary Judgment Proper?

Summary judgment is not a substitute for trial, Baylor v. Jacobson (1976), 170 Mont. 234, 552 P.2d 55. Rule 56 (c) Mont.R.Civ.P. permits summary judgment to issue only when there is no genuine issue of material fact, and the moving party is entitled to the judgment as a matter of law. Reaves v. Reinhold (Mont. 1980), 615 P.2d 896, 37 St.Rep. 1500. In Cereck v. Albertson's, Inc. (1981), 195 Mont. 409, 637 P.2d 509, we stated the test for granting summary

judgment:

> "It is well established that a party moving for summary judgment has the burden of showing a complete absence of any genuine issue as to all facts deemed material in light of the substantive principles that entitle that party to a judgment as a matter of law. [Citations omitted.] All reasonable inferences that may be drawn from the offered proof are to be drawn in favor of the party opposing summary judgment." [Citations omitted.]

The moving party's initial burden is two-fold. First, it must show the absence of any genuine issue as to material fact. Second, that party must also show that this set of facts entitles it to the judgment as matter of law. This necessarily implies the articulation of cogent legal grounds to which the facts apply.

In addressing the factual test, although the court has no duty to anticipate or speculate as to material facts to the contrary, it must nonetheless draw every inference in favor of the non-moving party. Larry C. Iverson, Inc. v. Bouma (1981), 195 Mont. 351, 639 P.2d 47; State ex rel Burlington Northern v. District Court (1972), 159 Mont. 295, 496 P.2d 1152.

If the movant has met this burden, it then shifts to the non-moving party to demonstrate a genuine issue of material fact. Mere denial or speculation will not suffice, the non-moving party must show facts sufficient to raise a genuine issue. Detert v. Lake County (Mont. 1984), 674 P.2d 1097, 41 St.Rep. 76; Lewis v. State (Mont. 1984), 675 P.2d 107, 41 St.Rep. 9.

The fatal defect below was respondent's failure to meet its initial burden. It did not show an absence of any genuine issue of material fact, and assuming it had, it did

not articulate cogent legal grounds upon which judgment could lie. To reach this conclusion, it is necessary to set forth the substantive law governing this matter.

Gamble Robinson Co. relied primarily on section 35-10-301(1), MCA, to the effect that:

> "Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership..."

To this Carousel Properties responded that any actions or representations by Harry Opsahl to Ken Marsh were beyond the scope of his authority because of the March 1979 amendments to the partnership agreement. Because he was acting beyond his authority, Opsahl did not bind the partnership. For this point, Carousel relies on the second clause of section 35-10-301(1), MCA: ". . . unless the partner so acting has in fact no authority to act for the partnership in the particular matter and the person with whom he is dealing has knowledge of the fact that he has no such authority."

Carousel attempts to impute "knowledge" onto Gamble Robinson by characterizing Opsahl's representations as not within the scope of business as ordinarily conducted and not "for the carrying on of the partnership in the usual way," section 35-10-301(2), MCA.

The scope of Harry Opsahl's authority under the partnership agreement is not the correct legal issue. Crosswinds Restaurant was legally being operated by the corporate entity, Crosswinds Enterprises. The only role that the partnership, Carousel, played was that of lessor of

the restaurant property. Harry Opsahl was acting for the corporation in his role as manager-employee. The five principals complied with all of the necessary legalities in assigning the partnership name, incorporating Crosswinds Enterprises, and leasing the property to the corporation. Gamble Robinson was dealing with the corporation, and not the partnership. In that respect it ran afoul of the general rule that persons must be partners to one another before they can be partners to third persons. St. Paul Machinery Mfg. Co. v. Bruce et. al. (1918), 54 Mont. 549, 172 P. 330; Martin v. Peyton (1927), 246, N.Y. 213, 158 N.E. 77; 59 Am.Jur.2d Partnership section 67. This underscores that the issue in this case is not whether the partnership, Carousel, is itself liable, but rather, whether the five shareholders of the corporation, Crosswinds Enterprises, are liable as partners.

In general, "[t]he effect of a belief by a person dealing with a corporation that it is a partnership is governed by the principles applicable to partnerships by estoppel." Rowley on Partnerships 2d ed. section 57.15 (1960), see also Mulkey v. Anglin (Okla. 1933), 25 P.2d 778. Section 35-10-308, MCA, is the pertinent statutory authority, stating in part:

> "(1) When a person by words spoken or written or by conduct represents himself or consents to another representing him to anyone as a partner in a existing partnership or with one or more persons not actual partners, he is liable to any such person to whom such representation has been made who has on the faith of such representation, given credit to the actual or apparent partnership, . . . " (Emphasis added.)

Partnership by estoppel is the exception to the general

-9-

rule, stated above, that parties must be partners to each other before they can be liable as partners to third parties. The elements are: (1) that the person or entity represents to the third party that he is dealing with a partnership, even though no such partnership exists; and (2) that the third party rely to his detriment. Section 35-10-308, MCA; Krone v. McCann (Mont. 1982), 638 P.2d 397, 39 St.Rep. 500. This reliance must be reasonable, and under the circumstances, the third party is "under a duty to make reasonable inquiry to ascertain whether he was dealing with an individual or a corporation." Payne v. Lucas (Tex. 1979), 517 S.W.2d 602, 607. The same applies to putative partnerships. Hempstead v. Allen (1953), 126 Mont. 578, 255 P.2d 342.

This determination is inherently factual. Gustafson v. Taber (1951), 125 Mont. 225, 234 P.2d 471. 8 Fletcher Cyclopedia Corporations, section 4019 (1982) points this out:

> "Liability of partners on contracts entered into and obligations incurred after the incorporation must depend upon a number of circumstances, among which are the legality and completeness of the incorporation, and notice thereof on the part of those subsequently dealing with the partners. Ordinarily the partners do not become liable on debts and obligations incurred after they have become incorporated, unless the other parties dealt with them as partners and were justified in so doing because of lack of actual or constructive notice or knowledge of their incorporation or attempted incorporation . . . The liability of a partner or firm for future debts of the . . . corporation, . . . when such debts are incurred by reason of credit having been extended because of the belief induced by the conduct of the partners that they were still interested in or carrying on the business, rests upon a principle akin to that of

> equitable estoppel, differing only in this respect that no specific intent to mislead need be shown." (Citations omitted.)

The ultimate factual issue in this case is whether the five principals, Dienes, Opsahl, Hart, Hart and Ingalls, under these circumstances, represented, or allowed themselves to be represented, as partners in Crosswinds Enterprises in operating Crosswinds Restaurant, and then whether Gamble Robinson relied thereupon. The particular issue as to Harry Opsahl's representation was whether he acted under the apparent authority to bind the shareholders as partners so as to give rise to reasonable reliance.

Although partnership by estoppel was not at issue below, we will look at the facts in the record and uphold the lower court's decision if it is ultimately correct. Shimsky v. Valley Credit Union (Mont. 1984), 676 P.2d 1308, 41 St.Rep. 258; Steadman v. ~~Hallard~~ Holland (1982), 197 Mont. 45, 641 P.2d 448; Kirby Co. of Bozeman v. Employment Security Division (1980), 614 P.2d 1040, 37 St.Rep. 1255. We do not affirm because the facts in the record do not provide a sufficient basis for summary judgment.

Respondent points out several facts supporting partnership liability. First, and most significant, are the alleged representations by Harry Opsahl to Tom Marsh, to which he testified to in deposition. In response to questioning, Opsahl stated:

> "Q. Do you feel that you would have, at that time, told them that this was a partnership operation?
>
> "A. I very well could have told them it was a partnership operation.
>
> "Q. Your statement is, then, it is possible that you advised Gamble

-11-

Robinson, when the account was opened that it was a partnership operation.

"A. It's _possible_.

"Q. Do you recall supplying information to Ken Marsh about credit for the restaurant business here in Dillon?

"A. I would say yes.

"Q. Do you recall telling Ken Marsh that the partners in the business were Walter Deines of Missoula, Harry Opsahl, manager, Ray Ingalls of Missoula, Alan Hart of Missoula and Carrol Hart of Missoula?

"A. I _don't recall_ that.

"Q. _Could_ you have provided him with that information?

"A. Yes.

"Q. So, basically your position is that you _could have_ and _probably did_ give the information to Gamble Robinson at this time, that it was a partnership operating a restaurant.

"A. That's _possible_.

"Q. _Probable_?

"A. Looking at the information that they have, _probable_.

"Q. Why?

"A. Why would I give them this information? I suppose in order to do business with them I would have had to give them some information to fill this credit application. Again, they weren't the type of supplier I would go after if they didn't come to me. You treat them more as a courtesy when they come. We did use them, but as a minor supplier. I don't know just when he got this information. _Maybe_ he got it at the time it was a partnership." (Emphasis added.)

And, in another statement at the deposition: "A. You know, there's five of us and we're building and opening restaurants. I guess I wasn't thinking in terms of different entities. We had the same purpose."

-12-

Although Opsahl's responses provide some support for a conclusion of partnership liability, this is not the type and weight of evidence sufficient to support summary judgment.

In any event, appellant contends that these representations were beyond the scope of Opsahl's authority because of the 1979 amendments to the Partnership Agreement. To the extent that this restriction on Opsahl's authority is used to protect Carousel, this argument is irrelevant, because the issue is the partnership liability of the five shareholders of Crosswinds Enterprises.

Gamble Robinson Co. also points out the fact that the record title to the real estate was held by Crosswinds Enterprises, the partnership. Although the failure to amend a title when the owning entity changes names does not support liability by itself, see e.g. section 70-20-109, MCA, it is evidence that can support the element of reliance. Gamble Robinson Co. nowhere alleged that it knew about the title at the time credit was given. Nor does the record unequivocally show that it relied upon the alleged partnership in granting that credit. Finally, the failure of Crosswinds to correct the billing document that apparently indicated a partnership does not itself support summary judgment.

In Facit-Addo, Inc. v. Davis Financial Corp (Ariz. 1982), 653 P.2d 356, the Arizona Supreme Court overturned a ruling of summary judgment in similar circumstances. In Facit-Addo, the appellant, Facit-Addo Co. had been dealing with two principals over the course of several months, and ultimately entered into a franchise agreement with them.

Things went sour, and the two alleged that they had previously incorporated and were not personally liable on the contract. Facit-Addo alleged no knowledge of the incorporation and asserted liability on the basis of partnership by estoppel.

The Arizona Supreme Court emphasized that partnership by estoppel is a factual issue, and that the testimony presented did not establish a set of facts one way or another. The case was remanded. See also Kitchell Co. v. Hermansen (1968), 8 Ariz.App. 424, 446 P.2d 934, where the Arizona Supreme Court stated:

> "We agree with the appellant that A.R.S. section 29-216 [which is the same as section 38-10-308, MCA] may estop a person from denying that he was acting as a general partner of a company rather than as an officer of a corporation. When it is contended that such a thing has occurred, the question is whether his actions and conduct were sufficient to lead a creditor to believe that the debtor was acting as an ostensible copartner, and whether he was assuming responsibility as such. This is an issue of fact for the trial court to determine from all of the evidence presented. J. & J. Builders Supply v. Caffin, 248 Cal.App.2d 292, 56 Cal.Rptr. 365 (1967)." (Summary judgment reversed.) (Emphasis added.)

See also Mulkey v. Anglin (Okla. 1933), 25 P.2d 778; Flemmer v. Ming (Mont. 1981), 621 P.2d 1038, 37 St.Rep. 1916.

We find that summary judgment was improperly granted, and thus do not reach the issue of whether this case is appropriate for the doctrine of piercing of the corporate veil.

Reversed and remanded.

_____
Justice

-14-

We concur:

_Frank I. Haswell_
Chief Justice

_John Conway Harrison_

_Gene B. Daly_

_Daniel J. Shea_
Justices