No. 80-83

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

LARRY C. IVERSON, INC., a Montana Corporation,

Plaintiff, Respondent and
Cross-Appellant,

vs.

RALPH BOUMA and MRS. RALPH BOUMA,

Defendants and Appellants.

Appeal from:  District Court of the Ninth Judicial District,
In and for the County of Pondera
Honorable Leonard H. Langen, Judge presiding.

Counsel of Record:

For Appellants:

Gale R. Gustafson argued, Conrad, Montana

For Respondents:

Swanberg, Koby, Swanberg and Matteucci, Great Falls,
Montana
Raymond F. Koby argued, Great Falls, Montana
Church, Harris, Johnson and Williams, Great Falls,
Montana
Cresap S. McCracken argued, Great Falls, Montana

Submitted:  September 16, 1981

Decided:  NOV 17 1981

Filed: NOV 17 1981

Thomas J. Kearney
——————————————————————————
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

On December 10, 1971, the receiver commenced this action in the Ninth Judicial District of the State of Montana, in and for the County of Pondera, for the purpose of obtaining a decree adjudging documents comprising an installment contract naming Larry C. Iverson, Inc., as seller, and Ralph Bouma, as purchaser, to be invalid, to regain possession of and quiet title to the 4,520 acres of farmland embraced in the contract, together with appropriate ancillary relief including an accounting by the Boumas.

In August 1978, plaintiff and the receiver joined in a motion for summary judgment, asserting that the Bouma contract was void as a matter of law. On September 25, 1979, the motion for summary judgment came on for hearing before the then presiding district judge, the Honorable Leonard H. Langen, who granted the motion for summary judgment. The court reporter's notes containing the order as announced from the bench were discovered missing following a break-in of her automobile before the notes were transcribed. Consequently, Judge Langen prepared and filed a "Memorandum in Lieu of Transcript of Hearing" in October 1979. On November 30, 1979, a formal summary judgment for plaintiff was entered which adjudged the Bouma contract void and ordered the Boumas to account for the money, rents, issues and profits derived from possession of the farm.

Boumas filed their accounting on February 21, 1980. Hearing on the accounting was held May 12 through 14, 1980. On September 9, 1980, the court entered its findings of fact, conclusions of law, judgment and decree on accounting, setting forth all of the respective adjustments found by the

court to be appropriate between the parties in conjunction with restoration of the farm to the corporation.

In February 1980, following entry of the summary judgment for the corporation and denial of Boumas' motions, the Boumas filed a notice of appeal to this Court. Boumas requested an order deferring prosecution of the appeal, and this request was granted in an order of this Court dated February 29, 1980, deferring prosecution until thirty days after the conclusion of the accounting and final adjustment and settlement of accounts by notice of entry by the clerk of court of the final order or judgment. Notice of entry of judgment was given by the clerk of court September 10, 1980, and this appeal followed.

To fully comprehend the nature of this case, it is necessary to include a history of the facts and procedures. This matter began when the Larry C. Iverson Corporation, hereinafter called "the corporation," was incorporated on July 17, 1964. The corporation is a Montana corporation with its principal place of business at Ledger, Montana. It was capitalized for $500,000 divided into 5,000 shares of a single class of common stock of $100 par value. It was organized to be governed in its business by a board of directors of three persons empowered to elect officers to perform the executive functions of the corporation.

On August 19, 1964, a total of 2,523 shares of stock of the corporation were issued to the following named persons in certificates as follows:

| Stockholder | Cert. # | No. of Shares |
|---|---|---|
| Larry C. Iverson | 1 | 463 |
| Linda M. Iverson | 2 | 1 |
| Mabel Iverson | 3 | 58 |

-3-

| | | |
|---|---|---|
| Mabel Iverson | 4 | 450 |
| Irene A. Keierleber | 5 | 300 |
| Gilbert F. Keierleber | 6 | 300 |
| Connie Iverson Fulton | 7 | 440 |
| Darrell L. Brown | 8 | 1 |
| Carl O. Iverson | 9 | 450 |
| Carl O. Iverson | 10 | 60 |

Total Shares            2,523

Further, on November 22, 1965, the following certificates were issued to replace lost certificates representing shares in the corporation:

| Stockholder | Cert. No. | Issued to Replace | No. of Shares |
|---|---|---|---|
| Irene A. Keierleber | 11 | 5 | 300 |
| Mabel Iverson | 12 | 3 | 58 |
| Carl O. Iverson | 13 | 10 | 60 |

In December 1964, Carl and Mabel Iverson and Gilbert and Irene Keierleber hired J. Milton Krull and John C. Treadaway as business managers for the corporation. Krull and Treadaway continued as business managers, consultants, purported officers, directors and stockholders of the corporation until it went into receivership in November 1970. In the receiver action it was adjudged that Krull and Treadaway were corporate usurpers, and they were "stripped" of their titles and any interest they "did not" have.

Soon thereafter, the stockholders of the corporation came upon hard times and by March 16, 1967, Farmers State Bank of Conrad had become the owner of 450 shares of Mabel Iverson's stock (of the original issue) and 450 shares of Carl Iverson's stock (of the original issue). Farmers State Bank acquired the ownership as a result of a pledge of the shares by Carl and Mabel on which the bank eventually had to foreclose. Also, as a result of this foreclosure, the corporation was able to redeem as treasury stock and become the equitable owner of 182.7 shares of the 900 shares now

-4-

owned by Farmers State Bank. Prior to the above foreclosure, on July 21, 1966, in Helena, Montana, United Bank of Pueblo purchased, at a sheriff's sale, 118 shares of stock of the corporation then owned by Carl and Mabel Iverson.

The other major stockholders also fell on bad times. Gilbert and Irene Keierleber were adjudicated bankrupt on January 24, 1966. As a result, the trustee in bankruptcy, Stanley M. Swaine, became the owner of the Keierlebers' stock--that is, Stanley M. Swaine, as trustee in bankruptcy of the estate of Irene Keierleber, became the owner of 300 shares of stock, and, as trustee in bankruptcy of the estate of Gilbert Keierleber, he became the owner of 300 more shares subject to a pledge to Farmers State Bank.

As a result of the above events, the corporation by March 16, 1967, was "owned" by almost a completely new set of shareholders. The ownership was as follows:

| Stockholder | Shares |
|---|---|
| UNITED BANK OF PUEBLO | 118 |
| CONNIE IVERSON FULTON<br>(Subject to pledge to the United<br>Bank of Pueblo for the purchase<br>price at par value of $100 per share) | 440 |
| FARMERS STATE BANK OF CONRAD | 717 |
| STANLEY M. SWAINE, as trustee in<br>bankruptcy of the estate of<br>Irene Keierleber | 300 |
| STANLEY M. SWAINE, as trustee in<br>bankruptcy of the estate of<br>Gilbert Keierleber (subect to a<br>pledge to the Farmers State Bank<br>of Conrad) | 300 |
| LARRY C. IVERSON, INC., (as<br>treasury stock) | 648 |
| Total | 2,523 |

Farmers State Bank, the trustee and United Bank had

all made demands upon the corporation, Krull and Treadaway for issuance of stock certificates to them, but these demands were refused. This resulted in state court actions, Nos. 8221 and 8073 respectively, in the District Court of the Ninth Judicial District, Pondera County, to quiet title to the ownership of the stock. The District Court found for the Farmers State Bank, the trustee and United Bank and awarded them title on April 7, 1971.

It is necessary at this juncture to include several factual events transpiring prior to the sale of 4,520 acres of farmland from the corporation to the defendants-appellants Bouma in July 1968. From the findings of fact and conclusions of law of Cause Nos. 8221 and 8073, it was found that a purported meeting of stockholders was held in Phoenix, Arizona, on November 22, 1965, which resulted in a second issue of stock to be distributed on January 3, 1966. However, it was found that not only was the meeting improper but that no compensation was given to the corporation for the stock issued and the amount of stock issued was in excess of that authorized by the articles of incorporation.

There was another "event" which took place in January 1967 and was discussed by the District Court. This "event" was another improper shareholder meeting in Dillon, Montana. At this meeting, attended only by Carl Iverson, Krull and Treadaway, it was decided to cancel all the shares of the second issue and to authorize a third issue. No consideration was given for the 2,595 shares "created," and 2,477 shares were "given" to Krull and Treadaway. It is important to note that at the time of this meeting at least 600 shares of the originally issued stock was "equitably" owned by

-6-

Stanley Swaine, as trustee in bankruptcy for the Keierlebers.

Although there were numerous events transpiring after incorporation in 1964 that well illustrate the manner in which the corporation was mismanaged, suffice it to say that the contract in question here was the fountainhead. In July 1968 the corporation purported to sell 4,520 acres of land to Ralph Bouma on a contract for deed for a purchase price of $734,500. The validity of the sale of land to Ralph Bouma (hereinafter called the Bouma contract) is the underlying issue of this appeal. Again, a history of the contract negotiations, terms, results, etc., is necessary to provide a clear understanding of the issue at hand. It is important to keep in mind, while reading the following factual summary, that 76 percent of the corporation was "owned" by Farmers State Bank of Conrad, United Bank of Pueblo, and Stanley Swaine, trustee in bankruptcy for the Keierlebers, at least a year before the Bouma contract.

In July 1968 approximately 4,500 acres of land of the corporation was sold to Ralph Bouma on a contract for deed for a purchase price of $734,500. Bouma made a partial downpayment to the corporation in the form of a trade of 1,440 acres of land located in Teton County (hereinafter called the Agawam place) at an allowance of $150 per acre. Though not immediately relevant, it was found from the District Court's findings of fact and conclusions of law that six weeks after the sale, the Agawam place was resold by Krull and Treadaway, acting for the corporation, to the father and brothers of Ralph Bouma at a price of $92.50 per acre, resulting in a loss of $82,800 to the corporation.

-7-

Also, the father and brothers sold the Agawam place one year later at $120 per acre.

The sale of the corporate farm occurred during a purported directors meeting in Phoenix, Arizona, on July 19, 1968. The parties involved at the meeting were Treadaway, Krull and Carl and Mabel Iverson. There were no other shareholders at the meeting, and there is no record of any notice having been given to any of the shareholders about the meeting. Also, no publication of notice or filing of the resolution authorizing the sale was published in the local newspaper, and no filing of the certificate of proceedings and no resolution authorizing sale was made with the Pondera County clerk and recorder. Further, no Montana attorney was retained during the transaction, no title investigation was undertaken, and the contract authorized payment of 44 percent of the unpaid installment balance of the contract directly to Krull and Treadaway.

In 1968 Farmers State Bank and Stanley W. Swaine commenced a stockholders derivative action against the corporation and the persons controlling it (District Court Cause No. 8073). In 1969 United Bank of Pueblo commenced an action for similar relief and for corporate dissolution (Cause No. 8221). These actions were consolidated during trial and concluded in 1971 with the exception of continuing jurisdiction to govern the receivership of the corporation. George Campanella was appointed receiver pendente lite and his status as receiver was affirmed in the final judgment.

The receiver then proceeded in 1971 against Bouma to recover the 4,520 acres of land which was originally the principal asset of the corporation. In February 1978, the

Honorable B. W. Thomas granted a petition of the receiver for relief from his responsibilities in pursuing the recovery of the acreage. The present stockholders reorganized the corporation under the directive of Judge Thomas and continued the action (Cause No. 8509) as a partially reconstituted corporation. It was not until September 25, 1979, that Judge Langen granted plaintiff-respondent's motion for summary judgment. In so doing he brought to an end some fifteen years of litigation involving the corporation which began with a receivership action by Farmers State Bank in 1965.

In the summary judgment motion, Judge Langen held that, as a matter of law, the persons with whom Bouma dealt and from whom he obtained the Bouma contract--namely, Krull, Treadaway and the Iversons--were without lawful authority to contract in behalf of the corporation, and, therefore, the contract was void. The judge also found that Bouma knew, or should have known, that these purported officers of the corporation did not have the authority to authorize the sale.

The court reporter's notes containing the order as announced from the bench on September 25, 1979, were discovered missing following a break-in of her automobile before they were transcribed. Judge Langen, therefore, prepared and filed a "Memorandum in Lieu of Transcript of Hearing" in October 1979. On November 30, 1979, a formal summary judgment for plaintiff was entered which adjudged the Bouma contract void and ordered Boumas to account for the money, rents, issues and profits derived from possession of the Iverson farm.

Appellants filed their accounting on February 21,

1980. Hearing on the accounting was held May 12 through 14, 1980. On September 9, 1980, the court entered its findings of fact, conclusions of law, judgment and decree on accounting (hereinafter "accounting decree") setting forth all of the respective adjustments found by the court to be appropriate between the parties in conjunction with restoration of the Iverson farm to the corporation.

In the accounting decree the Boumas were allowed credit for two-thirds of the crop harvested during the period between the Bouma contract date of April 17, 1968, to the date of the accounting hearing which closed May 14, 1980, together with interest on each annual crop from September 30 of each year. As a result of this finding, Boumas were allowed crop share and interest thereon totaling $819,321.08.

In a prehearing brief filed by the corporation in April 1980, the corporation furnished argument and authority to the court in support of its contention that the Boumas should be treated as "willful trespassers" not entitled to the fruits of their wrongful occupation of the Iverson farm. The court disagreed with this contention and made the crop harvest award as previously described.

In its accounting decree, the court also allowed the Boumas credit totaling $264,074 for the value of certain improvements made to the Iverson farm, to the extent of the enhanced value of the property resulting from the improvements. That is as follows:

| Improvement Per Accounting Decree Page 6 | Cost or Replacement Cost Per Bouma Acct | Credit Court Allowed Bouma |
|---|---|---|
| Three 7,500 bu. bins & six 22,000 bu. bins | $106,352 | $154,500 |
| Restoration of acreage | 4,000 | 38,000 |
| Totals | $110,352 | $192,500 |

The 7,500 bushel bins were installed in 1975 and 1976 and the 22,000 bushel bins in 1976. The acreage restoration took place over a period of six or seven years. The excess allowance was awarded over the corporation's objections that the enhanced value should be restricted to the cost thereof.

The 1968 Bouma contract purported to convey the Iverson farm, minerals and all, to the Boumas, less an "undivided one-half interest in the landowner's oil and gas royalty interest which it now has." Later, for credit against his running account at $1 per acre, Ralph Bouma procured a "mineral deed" from Krull and Treadaway purporting to convey the corporation's minerals on and under the Iverson farm to Bouma. When Bouma was shown to have received $34,748 in oil revenue from the Iverson farm and could not rely upon the void Bouma contract, he asserted the revenue was his by virtue of the "mineral deed." Judge Langen ruled, over the Boumas' objections, that the corporation was entitled to the oil money with interest. Boumas raised the issue again in their motion to alter or amend the accounting decree. The trial judge reversed himself and deleted from credits awarded the corporation the sum of $41,215.46, being the $34,748 oil revenue with accrued interest.

In February 1980, following entry of the summary

-11-

judgment for the corporation and denial of Boumas' motions pursuant to Rules 52 and 59, M.R.Civ.P., the Boumas filed notice of appeal to this Court. Boumas requested an order deferring prosecution of the appeal, and this request was granted in an order of this Court dated February 29, 1980, deferring prosecution until thirty days after the conclusion of the accounting and final adjustment and settlement of accounts by notice of entry by the clerk of court of the final order of judgment. Notice of entry of judgment was given by the clerk of court September 10, 1980.

In conclusion, the matters that now stand before this Court are the appeal by the Boumas of the District Court's ruling on summary judgment and the cross-appeal by the corporation on the District Court's accounting decree.

Numerous issues have been presented to this Court for review by appellants Bouma. The nineteen issues set forth in appellants' brief can be summarized as follows:

1. Did the District Court err in holding that the disputed contract was void?

2. Were there genuine issues of material fact in the case which made summary judgment inappropriate?

3. Are any of the appellants' "defenses" sufficient to warrant reversal of the summary judgment (i.e., (a) laches, (b) estoppel, (c) ratification, (d) statute of limitations, (e) etc.)?

4. Did the District Court err in substituting as plaintiff the partially reconstituted corporation in place of the plaintiff receiver while the corporation remained under receivership?

The following issue is presented by cross-appellant

-12-

Iverson, Inc:

1. Did the District Court err in its accounting decree?

We note at the outset of this opinion that Ralph Bouma, one of the appellants, has been obliged in every way. This Court has tried to be fair and impartial regardless of the fact that Mr. Bouma has failed to reciprocate. He has publicly accused this Court and its individual justices of conspiring against him and of using their positions to his personal detriment. Mr. Bouma has even gone so far as to file an action in Federal District Court alleging that the justices of this Court have violated his civil rights. That is his right. However, Mr. Bouma does not seem to realize the law cannot be, and will not be, distorted to satisfy the personal whims of one man--for ours is a system of laws, not men.

From the facts and appellants' contentions it would seem that this case presents numerous complex legal issues requiring careful legal analysis. Actually, the only real problem is trying to "find" the issues through the deluge of irrelevant material that appellants have presented to this Court. This appears to be the appellants' "style," as they have continued over the years to inundate the opposing party, the lower court and this Court with reams of unnecessary papers, files and demands. One need only to read this Court's comments toward appellants in two prior matters to grasp the degree to which the appellants have made a mockery of the appellate process.

We were first introduced to the appellants in Farmers State Bank of Conrad v. Iverson, et al., and Bouma (1973),

162 Mont. 130, 509 P.2d 839. This Court found that the appellants never even filed the appropriate papers seeking to intervene in a case in which they alleged they were entitled to be interested parties. The Court said: "In addition we must comment on the 'back door' attempt by petitioners and appellants [Boumas] to introduce extraneous evidence in these proceedings by attaching Appendix 'A,' 'B' and 'C' to their brief on appeal." 509 P.2d at 841. The Court added, "We strongly condemn this practice by counsel for appellants and use this occasion to warn other parties to future appeals that this practice will not be tolerated." The Court dismissed the appeal as frivolous and assessed damages of $1,000 under Rule 32, M.R.Civ.P., for bringing an appeal without merit.

In Campanella v. Bouma (1974), 164 Mont. 214, 520 P.2d 1073, 1074, this Court again noted that the appellants had filed motions unheard of in the law and set forth twenty-eight counts of error that were termed frivolous, impertinent, and immaterial. The Court stated: "Specific instances shall go uncited at this time, however it is apparent that in the past Mr. Bouma has used his lack of representation to his advantage in these proceedings and has also used the fact of his wife's representation also to his advantage." 520 P.2d at 1075. The Court further stated: "In so ruling, the Court has attempted to retain its objectivity, continuing to assume that such motion [motion for substitution of appearances] was legitimately motivated, an exceedingly difficult task considering the motion is absurd in nature, irrelevant and scandalous in content and vituperative in tone." 520 P.2d at 1078. Finally, this

Court, while on the brink of holding that appellants' motion was contemptuous, stated: "There is no place in our judicial system for such an undignified product even if a member of the bar had not lent his name to it." 520 P.2d at 1078. It is apparent that the appellants do not take heed of this Court's warnings but continue to present frivolous, scandalous, burdensome, inane and totally irrelevant materials for review.

Issue 1: Did the District Court err in holding that the disputed contract was void?

The District Court's ruling was based on only one narrow issue. This issue was the basis for the granting of the corporation's summary judgment motion. After reviewing the affidavits, depositions, documents, court decrees, orders and findings of fact and conclusions of law from consolidated causes 8221/8073, the District Court found that the contract was void from the start. Though there may have been numerous materials presented to the court, the judge found that the whole matter boiled down to the validity of the contract. The court's finding that the contract was void is well supported by the facts and the law.

From the findings of fact and conclusions of law of causes 8221/8073, it was determined that the corporation met only twice before the Bouma contract was entered into. The first time was on August 19, 1964, when the corporation was organized, and the second time was in Dillon, Montana, on January 30, 1967. The first meeting was a proper meeting, and it was at this meeting that the corporation attempted to adopt a bylaw that may have prevented the later contract from being void. The bylaw contained the following provi-

sion:

> "The Board of Directors shall have the power
> and general authority to sell, lease,
> mortgage, exchange or otherwise dispose of
> the whole or any part of the property and
> assets of every kind and description of the
> corporation, for property for the whole or
> part of the capital stock of any other
> corporation . . ."

This bylaw was never made effective. Sections 15-908 and 15-909, R.C.M. 1947, which were then in effect, required that, for this type of bylaw to be effective, it must be noticed and published in a newspaper printed in the county, and recorded in the office of the county clerk and recorder in the same fashion as specific authorization meetings for the sale of substantially all of a corporation's assets. The affidavit of the publisher of the local newspaper, Jack Lee, and the affidavit of the county clerk and recorder, Gladys Mortenson, both establish that no notice was published and no filing of the bylaw was made.

Section 15-908, R.C.M. 1947, provided in part:

> "Stockholders may adopt by-law giving
> directors power to sell or lease property of
> corporation--limitations on which authority.
> At any meeting of the stockholders of any
> corporation called and noticed in the manner
> provided by this chapter, the stockholders
> may . . . adopt a by-law giving the board of
> directors of such corporation such general
> authority to sell, lease, mortgage, exchange
> or otherwise dispose of the whole or any part
> of the property and assets of every kind and
> description of such corporation . . ."

Section 15-909, R.C.M. 1947, provided in part:

> "Same--contents of resolution and notice.
> The resolution calling the meeting and the
> notice mailed to stockholders and published
> shall state that the meeting is called for
> the purpose of considering the adoption of a
> by-law empowering the board of directors of
> the corporation to sell, lease, mortgage,
> exchange, or otherwise dispose of the whole
> or any part of the property and assets of
> every kind and description of such corpora-

> tion, for property, or for the whole or part
> of the capital stock of any other corpora-
> tion, whether domestic or foreign, or other-
> wise. In all other respects notice shall be
> given and the meeting shall be had and a copy
> of the minutes thereof shall be filed as
> provided by this chapter."

Appellants cannot expect a court to overlook a statute that is clear in its intent.

There is further case law and encyclopedia law to support the judge's ruling. In the case of Hanrahan v. Andersen (1939), 108 Mont. 218, 90 P.2d 494, 499, the Court held:

> ". . . it is equally well settled in the
> absence of express statute, that in the case
> of a solvent corporation which has accumu-
> lated property for use in its business,
> neither the directors, nor even the stock-
> holders except by unanimous vote, have the
> authority to dispose of such property except
> in the furtherance and in the ordinary course
> of the business; for otherwise the authority
> is being used to defeat, to that extent, the
> very purpose for which the authority was
> given. . ."

Also, in 19 C.J.S. Corporations, § 1240 at 932, it is found that: "Sales and assignments by corporations, to be valid, must be within the corporate powers, made in good faith and in conformity with governing charter or statutory regula- tions." The law is clear on this point. It is not proper for a corporation to sell its property assets, in this case the only real asset, without following the requisite statutes, unless there is a bylaw provision that has been properly filed and published to allow it.

Further, from the findings of fact and conclusions of law of causes 8221/8073, it was found that the parties who represented the corporation at the time of the Bouma con- tract, August 1968, were without authority to act for the corporation. Thus, the people who purported to represent

the corporation lacked the capacity to contract. Worman Motor Co. v. Hill (1939), 54 Ariz. 227, 94 P.2d 865; 17 C.J.S. Contracts, § 27 at 630.

It is also to be observed, by way of limitation of the doctrine of ultra vires, that an attempted conveyance by the officers of a corporation of its property without authority does not involve the doctrine of ultra vires, but of agents to act on behalf of their principal without authority. 19 Am.Jur.2d § 963 at 441; Hotaling v. Hotaling (1924), 193 Cal. 368, 224 P. 455, 56 A.L.R. 734. In Hotaling, a board of directors meeting was held to decide whether certain property of the corporation was to be sold, and under the bylaws of the corporation a majority of the board of directors was necessary to approve a property sale. At the meeting only two of the five directors voted. The court ruled the contract void and that this act was not a question of ultra vires but of agents who acted on behalf of a principal (the corporation) without the authority to do so.

Without the bylaw necessary to provide an exception to the statutory rules, the "purported" directors were required to follow strict statutory procedure to sell the farmland to the appellants. In pertinent part section 15-901, R.C.M. 1947, applicable at the time of the contract, provided:

> "Procedure for sale, lease, etc., of corporate property--call of stockholders' meeting. The board of directors or trustees of any stock corporation . . . shall have power, and upon request of stockholders representing at least one-half (1/2) of the capital stock outstanding and . . . entitled . . . to vote at the meeting hereinafter provided for, it shall be their duty to call by resolution a meeting of the stockholders

of such corporation, appearing as such upon its books, and entitled to vote at such meeting, as aforesaid, for the purpose of considering the question of selling, leasing, mortgaging, exchanging, or otherwise disposing of the whole or any part of the property and assets of every kind and description of such corporation, for property, or for the whole or part of the capital stock of any other corporation, whether domestic or foreign, or otherwise. Such meeting shall be held at the principal place of business of such corporation, and at least thirty (30) days previous notice of the time and place of such meeting . . ."

Section 15-902, R.C.M. 1947, provided in pertinent part:

"Notice of stockholders' meeting--contents--mailing--publication. The secretary of the corporation shall make out and deposit in the United States post office, postage paid, a notice of such meeting, directed to each stockholder of record of the corporation, entitled to vote at such meeting, as aforesaid, by his name and his place of residence appearing on said records, and shall make and file his affidavit of such deposit. . . The notice shall state the time, place and the purpose of the meeting, and shall contain a complete and specific statement of the proposal to be considered and acted upon at said meeting, including in all cases where only a part of the property of such corporation is affected, a general description of the property proposed to be sold, leased, mortgaged, exchanged, or otherwise disposed of. A similar notice shall also be published at least once a week for at least four (4) consecutive weeks preceding the day of said meeting, in some newspaper of general circulation published in the county wherein the principal place of business of such corporation is located. . ."

Further, section 15-903, R.C.M. 1947, provided:

"Organization of meeting--vote on proposal--adoption of resolution. Upon the day appointed for said meeting . . . if stockholders representing at least two-thirds (2/3) of the whole number of shares of the capital stock of said corporation then outstanding, and of record on the books of the corporation, and entitled, as aforesaid, to vote at such meeting, appearing at said meeting in person or by agents or proxies, as above provided, vote in favor of any such proposition, whether proposed by the directors or trustees, or not, as said stock-

holders may see fit, which proposition shall be in the form of a resolution specifying the particulars thereof and entered on the minutes of said stockholders' meeting, the said proposition or resolution shall be taken and adopted as the act of the corporation, and shall be carried out as such, and shall be approved and adopted by the board of directors or trustees."

And, section 15-905, R.C.M. 1947, provided:

"Secretary to enter result in minutes--copy thereof to be filed with county clerk of counties where corporation owns real estate. The secretary of such meeting shall enter upon the minutes of said stockholders meeting the total number of shares, and the number of shares of each class, voted for or against the proposition or resolution, and by whom voted, and stockholders voting against said proposition or resolution shall be taken as dissenting therefrom. Upon the adoption of any proposition or resolution such as above referred to, by the stockholders meeting, the secretary of the meeting shall make out a true and complete copy of the minutes of the stockholders' meeting, which shall be signed by the chairman of such meeting, and attested by said secretary and verified by them and acknowledged as required in the case of conveyance of real estate, and shall file the same for record in the office of the county clerk and recorder of the county wherein the principal office or place of business of such corporation is situated, and also in the office of the county clerk and recorder of any other counties wherein any of the real property included in the proposition or resolution adopted by said stockholders' meeting is situated."

Finally, section 15-501, R.C.M. 1947, provided:

"Meeting of stockholders and board of directors--where held. The meetings of the stockholders of a corporation must be held at its office or principal place of business in the state of Montana, except as hereinafter provided . . ."

The statutory language is clear. A corporation must comply with the statutes to properly convey corporate property. Failure to do so has been addressed by this Court in Hanrahan v. Andersen, supra. In Hanrahan this Court held that failure to comply with the statutes in a transaction of

-20-

this type voids the contract. The case dealt with a conveyance of substantially all the assets of a corporation. Sections 15-901 through 15-910, R.C.M. 1947, were all codified as section 6004, R.C.M. 1921, and these same statutes were in effect at the time of the Bouma sale. The Court held in Hanrahan, 90 P.2d at 500, as follows:

> "Defendants contend that these transfers to Consolidated and Andersen do not come within the provisions of section 6004, because Capital retained its official books, records and office, and thereafter transacted business and was shown thereafter to have had other property. The argument overlooks the reason for the rule. If the question were merely whether the corporation had other property after the transaction, no sale could ever be objected to by a minority stockholder, for in any sale other property is received as consideration. Furthermore, the statute refers to the sale of 'the whole or any part' of the property. Every part of the statute must be construed as having some meaning, and since the obvious purpose of the statute was to enlarge corporate powers to sell property, it must be construed as authorizing sales not already within the powers of the board of directors because not in the furtherance and in the ordinary course of the corporation's established business. In any event it is apparent from the record that both transactions involved all, of the corporate assets and greatly affected the established corporate business, and therefore came well within the class of transactions necessitating compliance with the statute.

> "The conveyance to Consolidated was a nullity, for the stockholders' meetings purported to authorize it were held on insufficient notice. Whether the defects indicated in those proceedings were material need not be considered.

> ". . .Furthermore, the trust deed to Andersen was obviously void because of failure to comply with the provisions of section 6004." (Emphasis added.)

Also, in Schwartz v. Inspiration Gold Mining Co. (D. Mont. 1936), 15 F.Supp. 1030, 1036, the court came to a similar conclusion:

-21-

"The statute requires that 'notice shall state the time, place and the purpose of the meeting' [of stockholders]; 'and shall contain a complete and specific statement of the proposal to be considered and acted upon at said meeting.' Section 6004, Rev. Codes Mont. 1921, as amended, Sess. Laws 1931, pp. 108, 107, c. 42, § 1 . . .

" . . .

"No answer to any of these inquiries can be found in the notice here under consideration. It follows that the notice does not 'contain a complete and specific statement of the proposal to be considered and acted upon at the meeting'; with the result that the same does not meet the requirements of the Montana statute and is insufficient in law to set the power of the stockholders of the defendant corporation in motion. Jones v. Vance Shoe Company (C.C.A. 7 th Cir.) 115 F. 707, 708; Forrester v. Boston & M. Mining Company, 21 Mont. 544, 55 P. 229, 253; Thompson on Corporation (3rd Ed.) pp. 106 and 284."

Clearly, the courts have held that the statutes regulating the sale of corporate assets must be strictly followed and that the failure to do so will result in the transaction being declared a nullity.

The only law in support of appellants' position, not cited by appellants, can be found at 9 A.L.R.2d 1297, and can easily be distinguished. There is a discussion in this section of when and how a corporation in the business of selling property need not have shareholder approval to sell corporate assets. However, the section draws a distinction where a corporation is selling its only major asset and holds that in those circumstances shareholder approval is necessary. Further, another distinction can be found in the fact that there is no mention of how state statutes affecting corporate property sales may affect the validity of a sale without shareholder approval.

The facts and law in support of Judge Langen's ruling

does not end here. In the findings of fact and conclusions of law in causes 8221/8073, the court held that the directors meeting in which the Bouma contract came to pass was a total sham. The reasons are clear. The corporate law at that time required that for a person to be a corporate director, they also had to be a stockholder. None of the parties present at the Phoenix "directors" meeting were stockholders. That is, Mabel and Carl Iverson had lost their stock to Farmers State Bank over a year before this meeting was called. Krull and Treadaway had never owned stock in the corporation and did not own any at the time of the meeting. Also, all the other stock was held by various interests that were not present at the meeting.

The reason that no stockholders were in attendance at the meeting was that no notice of the stockholders meeting was even given, contrary to Chapter 9, Title 15, of the Montana Corporation Code, then in effect. Also no provision was made for protection of the rights of dissenting stockholders, as the statutes required. No publication of notice or filing of the resolution authorizing the sale was published in the local newspaper, and no filing of the certificates of proceedings and resolution authorizing the sale was made with the Pondera County clerk and recorder. Quite simply, the meeting was a farce.

Appellants argue that the shareholders who were present were the shareholders of record and that, Farmers State Bank, United Bank of Pueblo and Stanley Swaine were not shareholders of record and, therefore, not entitled to notice. This argument flies in the face of the law and the reality of the situation. First of all, Montana case law

-23-

holds that a person may be owner of stock in a corporation even though certificates of stock have not been issued. Henningsen v. Stromberg (1950), 124 Mont. 185, 221 P.2d 438. Secondly, it required a suit by Farmers State Bank, United Bank of Pueblo and Stanley Swaine to have their interests recognized. Farmers State Bank of Conrad v. Iverson and Bouma (1973), 162 Mont. 130, 509 P.2d 839. The fact that Krull and Treadaway refused to issue certificates until they were forced to do so by court order does not mean that the aforementioned parties were not shareholders. Thus, the meeting was held by parties incapable of authorizing anything, much less a sale of the only major corporate asset.

Of importance in any determination is the manner in which Bouma conducted himself at the time of the sale. No Montana attorney was retained in connection with the transaction. No title investigation was conducted by Boumas on a three-quarters of a million dollar land transaction. The contract authorized payment of 44 percent of the unpaid contract installment balance directly to Krull and Treadaway instead of to the corporation. These facts illustrate the existence of questionable circumstances. Further, the fact that Bouma's ranch, the Agawam place, was purchased by the corporation for $150 per acre and six weeks later sold to members of Bouma's family, together with the fact that Bouma admitted knowing of the Farmers State Bank action and even being told of Farmers State Bank interests by Krull and Treadaway indicate that Judge Langen's ruling was not contrary to the weight of the evidence.

It is apparent from the record in this case that the transactions involved virtually all of the corporate assets,

greatly affected the established corporate business and, therefore, came well within that class of transactions necessitating compliance with the statute. Accordingly, there was a pretense to comply with the law, and the failure to do so caused the contract to be void. There is no question that the meeting was a sham and that the shareholders entitled to vote, 76 percent of the corporation, were not notified and not represented. Appellants knew about the shareholder action, took a gamble when they "purchased" the Iverson farm and lost.

Issue 2: Were there genuine issues of material fact in the case which made summary judgment inappropriate?

Summary judgment is proper ". . . if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . ." Rule 56(c), M.R.Civ.P.

Appellants contend that the District Court erred in granting the corporation's summary judgment motion because there were material issues of fact that were present and must be adjudicated by a trial. Appellants urge that they presented sufficient evidence to support their own summary judgment motion and to deny the respondent's motion. Appellants argue that because of their "numerous affidavits" the motion should be denied. Also, they contend that the contract voidability was a question of fact for a jury, that the judge's misquotation of their seventh defense was improper and that somehow res judicata has been improperly

used against them.  None of these arguments are on point.
Nor are any of them sufficient to warrant a reversal of the
District Court's ruling.

Appellants presented nothing but fanciful and frivo-
lous material, nothing which could be considered to be of a
substantial nature.  This is contrary to the law in Montana.
Cheyenne W. Bank v. Young (1978), 179 Mont. 492, 587 P.2d
401, 35 St.Rep. 1806.  The case law in Montana is clear on
this issue and has been repeated and discussed numerous
times.  In Flansberg v. Montana Power Co. (1970), 154 Mont.
53, 460 P.2d 263, the Court held that the burden is upon the
party opposing the motion to present evidence of a substan-
tial and material nature raising a genuine issue of fact.
Once the corporation had presented its facts in support of
the motion, appellants had the burden of opposing the motion
with their own facts.  They failed to do so.

The case law is explicit and the citations abound
that the burden shifts to the party opposing the motion to
present material and substantial facts to oppose the motion.
Harland v. Anderson (1976), 169 Mont. 447, 548 P.2d 613;
Taylor v. Anaconda Federal Credit Union (1976), 170 Mont.
51, 540 P.2d 151; Rumph v. Dale Edwards, Inc. (1979), _____
Mont. ____, 600 P.2d 163, 36 St.Rep. 1022; 6 Moore's Fed.
Prac. ¶56.16.  In State ex rel. Burlington Northern v.
District Court (1972), 159 Mont. 295, 496 P.2d 1152, we
affirmed the rule that:

> "Failure of the party opposing the motion to
> either raise or demonstrate the existence of
> a genuine issue of material fact, or to
> demonstrate that the legal issue should not
> be determined in favor of the movant, is
> evidence that the party's burden was not
> carried.  Summary judgment is then proper,
> the court being under no duty to anticipate

proof to establish a material and substantial issue of fact." 496 P.2d at 1155.

In Harland v. Anderson, supra, the Court held that once the burden has shifted, the party opposing the motion is held to a standard of proof which is as substantial as that initially imposed on the moving party. Finally, in Naegeli v. Daniels (1965), 145 Mont. 323, 400 P.2d 896, the Court held that the trial court, in considering a motion for summary judgment, has no duty to anticipate possible proof that might be offered under the pleadings and that asking for such foresight demands "clairvoyance" not possessed by even a trial judge. The contentions for reversal that appellants argued (i.e., res judicata, contract voidability, etc.) were not presented in a substantial and material manner to the trial court.

The court found the contract void because the reams of evidence presented by the respondent supported it, and one need only to look to the previous discussion to see that the evidence was awesome. Appellants had to present evidence to oppose this material. They did not, and, therefore, the summary judgment motion was proper.

Appellants contend that the manner in which the judge construed their seventh defense should be sufficient to deny the motion. The substitution of the word "further" for "later" is not sufficient grounds in light of the tremendous amount of facts presented by respondent to warrant a reversal of the ruling.

Finally, appellants argue that the judgment from causes 8221/8073 should not be used (res judicata) against them. The findings of fact and conclusions of law that were established in consolidated causes 8221/8073 are binding on

the appellants. 6 Moore's Fed. Prac. ¶56; In Re Russell (1974), 115 Cal.Rptr. 511, 12 Cal.3d 229, 524 P.2d 1295. First, the issue is one that would involve collateral estoppel, i.e., issue preclusion; the issue does not involve res judicata, i.e., claim preclusion. Second, it would be burdensome, if not illogical, for a court not to recognize the findings and judgment of another court on the same factual issues. Finally, the contract was void ab initio in August 1968, and the contract remains so today.

> Issue 3: Are any of the appellants' "defenses" sufficient to warrant a reversal of the summary judgment (i.e., (a) laches, (b) estoppel, (c) ratification, (d) statute of limitations, (e) etc.)?

Appellants contend that the lower court erred because it failed to recognize the numerous "defenses" that would warrant reversal of the summary judgment. In the previous discussion the basis for granting summary judgment was presented. Appellants had the burden at the time of the motion in the District Court to present material and substantial facts to oppose the granting of the motion. Naegeli v. Daniels (1965), 145 Mont. 323, 400 P.2d 896; Harland v. Anderson (1976), 169 Mont. 447, 548 P.2d 613; 6 Moore's Fed. Prac. ¶56.15. They failed to do this.

Appellants contend that the respondent by its actions ratified the contract and is thereby estopped from saying the contract is void. It has been held that a contract entered into without the power to contract cannot be ratified or enforced and that the incapacity to contract cannot be removed by estoppel. Granzow v. Village of Lyons (7th Cir. 1937), 89 F.2d 83.

-28-

Further, appellants argue that respondent's action is barred by laches. The respondent has been pursuing this matter since the court declared that the corporate usurpers must be ejected and the rightful stockholders must be recognized. Farmers State Bank of Conrad v. Iverson (1973), 162 Mont. 130, 509 P.2d 839. Respondent has not failed to pursue this action in a timely manner, but was merely delayed by the actions of the appellants and the corporate usurpers.

The final contention by the appellants is that the respondent is barred by the statute of limitations to bring this action. This is unfounded because section 27-2-214 and section 27-2-202, MCA, hold otherwise. Also, appellants could not have expected respondent to file sooner than December 10, 1971, because the corporation was in the control of the usurpers and the degree to which the usurpers had been defrauding the corporation did not become known until well after the contract in question was entered into.

> Issue 4: Did the District Court err in substituting the partially reconstituted corporation in place of the plaintiff receiver while the corporation remained under receivership?

Appellants contend the lower court erred in substituting the partially reconstituted corporation in place of the receiver. Under section 15-2291, R.C.M. 1947 (now section 35-1-922, MCA), the District Court had the power to make the substitution. Appellants' argument is unfounded in the facts and the law.

> Issue on cross-appeal: Did the District Court err in its accounting decree?

This is a suit for an accounting. It must be decided

upon its own peculiar facts and circumstances which clearly distinguish it from all other authorities cited and relied upon by either party. Reickoff v. Consolidated Gas Co. (1950), 123 Mont. 555, 217 P.2d 1076.

The District Court ruled that appellants were entitled to $819,321.08 for the crop share and interest. The corporation argues that this is improper because the court is rewarding the appellants for their illegal action. In an accounting action, the court is sitting in equity and can determine from the facts presented, the testimony and the circumstances which awards are the most equitable. The appellants did not act in good faith in their effort to acquire the land in question. There is little doubt that appellants knew the contract they entered into was suspect. However, they did give up something to acquire the farm. They gambled that the contract would never be questioned and proceeded to treat the land as their own since 1968. To deprive persons of their efforts and to say that they did not actually "keep" the farm operating efficiently and profitably during that period would also be unfair.

A dilemma occurs as to whether appellants should be awarded for their efforts or deprived of any reimbursement for the caretaking of the farm. The District Court was proper in ruling that the appellants should receive two-thirds of the crop share, $819,321.08, if for no other reason than it was fair and equitable. To deprive appellants the fruits of their labor for thirteen years would not be in the best interests of justice, fair play and public policy. Rieckhoff, supra, does not apply as that case deals with a willful trespasser. This Court will not treat appel-

lants as such, but will follow the rule of equity that each case stands on its own facts in an equity action. Hamilton v. Rock (1948), 121 Mont. 245, 191 P.2d 663.

However, the District Court did err in its accounting decree in allowing appellants the excess amounts by which the value of improvements made upon the farm exceeded the cost of such improvements. The corporation argues that the reimbursement for the improvements should be limited to the cost of those improvements and cites the Restatement of the Law, Restitution, § 42 at 42, as authority, along with various case citations in support of the Restatement. Also, the corporation contends that the rule in this state is that a willful trespasser shall receive no compensation for the improvements made and any improvements appellants made after the instigation of this action should not be compensated for. However, the corporation asked in its pleadings that appellants receive no more than the cost of the improvements. 42 C.J.S. Improvements, § 7 at 436-437, states:

> "As a general rule an occupant is regarded as an occupant in bad faith and not entitled to compensation for his improvements, where, and only where, he either has actual notice of adverse title, or what is equivalent thereto, such as where there is brought home to him notice of some fact or circumstance that would put a man of ordinary prudence to such an inquiry as would, if honestly followed, lead to a knowledge of the adverse title. It has also been held that an occupant cannot recover if he had full means of discovering the existence of such adverse title, because in order to be in the position of a holder in good faith he must have used proper care and diligence in ascertaining the condition of the title on which he bases his claim . . ."

See also Fouser v. Paige (1980), 101 Idaho 294, 612 P.2d 137. The discussion continues in 42 C.J.S. Improvements, § 7 at 438, by stating, ". . . it is generally held that an

occupant is not entitled to compensation for improvements made on the land after the commencement of an action in which title is disputed." From the foregoing and from the facts on hand in this matter, it would appear that appellants are not entitled to the cost of their improvements, much less the enhanced value. Appellants were aware of the questionable nature of their title, contained in the void contract, and there is no question that the majority of the improvements took place after this suit had commenced. However, the corporation is asking that the credit allowed appellants be reduced by $82,148--that is, it does not want the entire credit removed but only the enhanced value. Since this is the amount plead, and this Court is sitting in equity on the accounting decree, the award to appellants should be reduced from $192,500 (enhanced value of improvements) to $110,352, the cost of the improvements.

The District Court further erred in the accounting decree by allowing appellants to retain the oil and gas income derived from the corporation farmland during the accounting period. Boumas received "title" to the oil and gas rights through the void contract. The corporation, represented by Krull and Treadaway, did not have the authority to make the original contract and, therefore, did not have the authority to contract away the corporation's mineral (oil and gas) rights. This allowance must be vacated.

As so modified, the judgment of the District Court is affirmed.

_____
Justice

We concur:

_Frank I. Haswell_
Chief Justice

_John Conway Harrison_

_____

_Jack B. Manison Jr._
Justices

_Jack L. Green_
Honorable Jack L. Green, District Judge, sitting in place of Mr. Justice Daniel J. Shea

Mr. Justice John C. Sheehy:

I concur in part but dissent to the offset result in the majority opinion.

_John C. Sheehy_
Justice

-33-