**FEDERAL SAVINGS AND LOAN IN-SURANCE CORPORATION, as Receiver for the Montana Federal Savings Bank, Plaintiff,**

v.

**AETNA CASUALTY AND SURETY COMPANY, Defendant and Third–Party Plaintiff,**

v.

**Marge M. KIS, Boyd G. Hall, Robert Happ, Conn Tatum, Frank Palicz, E.S.P. Company, a partnership, R.M. Brown, and Walter Deets, Third–Party Defendants.**

No. CV 87–147–M–CCL.

United States District Court,
D. Montana,
Missoula Division.

Oct. 30, 1990.

C. Eugene Phillips, Murphy Law Firm, Kalispell, Mont., Fred Mittelman, Trial Atty., Washington, D.C., Wayne G. Popham, Popham, Haik, Schnobrich & Kaufman, Minneapolis, Minn., for plaintiff.

Richard Ranney, Williams Law Firm, Douglas G. Skjelset, Edward Murphy, Datsopoulos, MacDonald & Lind, Missoula, Mont., for defendants.

## OPINION AND ORDER

LOVELL, District Judge.

Before the court are Defendant's motion for summary judgment as to Count I and Plaintiff's motions for partial summary judgment and motion in limine. Plaintiff Federal Savings and Loan Insurance Corporation (FSLIC) filed this complaint, acting as receiver for Montana Federal Savings Bank (Montana Savings), to recover under a fidelity bond issued by Defendant Aetna to Montana Savings. This fidelity bond insured Montana Savings against loss resulting from an employee's dishonest or fraudulent acts. FSLIC has asserted a claim against Aetna under the bond for five separate losses allegedly resulting from the dishonest or fraudulent acts of Marge M. Kis (Kis), Boyd G. Hall (Hall), Robert Happ (Happ), Conn Tatum (Tatum), and Frank Palicz (Palicz), all former members of the Montana Savings Board of Directors. Aetna asserts that Montana Savings failed to comply with the bond's notice/proof-of-loss provision, a condition precedent to recovery under the bond, and has moved for summary judgment on all the losses.

 The bond requires the insured to notify Aetna of a loss at the earliest practicable moment, not to exceed 30 days, after discovery of the loss and to file a proof-of-loss within six months of discovery. The parties agree that Montana Savings first notified Aetna of the loss on August 16, 1985, and furnished Aetna with the proof-of-loss forms on February 11, 1986. For purposes of this summary judgment motion, the only disputed factual issue is the time when the losses were discovered.

Aetna contends that Montana Savings became aware of all relevant facts regarding three of the five losses by February of 1984 and of the other two losses by August of 1984. FSLIC argues that Montana Savings discovered, within the meaning of the bond, each of the five losses in August 1985. According to FSLIC, prior to that time Montana Savings President Ron Weber had suspicions of possible wrongdoing but did not have proof and the domination of Montana Savings by the wrongdoers and those in collusion with them made it impossible for Montana Savings to determine that dishonesty and fraud had occurred.

FSLIC cannot avoid compliance with the notice provision of the bond based on Montana Saving's subjective assessment of the facts. The bond clearly provides for an objective rather than a subjective test by defining discovery as occurring "when the insured becomes aware of facts which would cause a reasonable person to assume that a loss covered by the bond has been or will be incurred, even though the exact amount or details of loss may not then be known."

Generally, issues which involve the application of a reasonableness standard are within the province of the jury; however, merely asserting such an issue does not preclude a grant of summary judgment. *See First Security Savings v. Kansas Bankers Surety*, 849 F.2d 345, 350 (8th Cir.1988) (summary judgment granted because there was "compelling evidence that proved" when discovery of employee dishonesty occurred). Summary judgment is properly granted under Rule 56(c) if "the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

The initial burden is upon the party seeking summary judgment to demonstrate the basis for its motion and to identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In support of its motion for summary judgment, Aetna submitted a two volume appendix, consisting of various documents and records of Montana Savings and the Federal Home Loan Bank Board (FHLBB).

One of the documents in that appendix, the Federal Home Loan Bank Board's official report of its January 1984 examination of Montana Savings, establishes the extent of Montana Savings' knowledge of three of the losses claimed under the bond. According to the letter accompanying the report, it was mailed to the Board of Directors of Montana Savings on July 10, 1984. The board held a special meeting on August 6, 1984, to review the examination report. Conn Tatum, Boyd Hall, Ron Weber, Dee Mortenson, Bill Kohlbeck, and Willard Johnson attended that meeting. Kis and Happ were not present because they had previously resigned from the board, at the request of the FHLBB. Although Conn Tatum and Boyd Hall have been implicated in FSLIC's allegations of dishonesty, no allegations of collusion or dishonesty have been made against the other board members at the meeting. By August 6, 1984, four non-collusive board members were aware of the facts contained in the January 1984 examination report.

The report contained a summary of mismanagement by Kis and Happ relating to the claimed losses incurred through the Lakeview agreement, the building expansion, and the acquisition of lot 6. The fact that Kis and Happ benefitted financially for what was termed their mismanagement is apparent. Land was purchased at a possibly inflated price from Kis, Happ, and another director, and the association was subjected to the purchase of contracts of sales of time share condominium units in which Kis had a vested financial interest. The comments portion of the report notes that Kis was having a personal residence built at the same time the addition was being constructed and that Montana Savings was charged for eight squares of grey shingles although the addition has a brown roof and Happ's apparently new office roof was grey.

The facts discovered by the FHLBB in its January 1984 examination of Montana Savings led the FHLBB to request Happ, Kis, Palicz, and Hall to resign from the Montana Savings board of directors. The other Montana Savings board members were aware of that request and Kis, Happ, and Palicz did resign from the board. Those facts also led the FHLBB to report Kis, Happ, Hall, and Palicz as the persons responsible for misuse of position in violation of federal law to the FBI and the United States Attorney. The report to the FBI and the United States Attorney does not refer to any material facts not given to the Montana Savings board in the examination report. Those same facts, known to the board members in August of 1984, are virtually recited in the proof-of-loss forms filed in February of 1986.

## CONN TATUM LOANS

On September 18, 1984, Director Hall sent a letter to President Weber notifying him of potential problems with Tatum's loans. On October 11, 1984, Vice–President Mocabee sent a letter to the FHLBB which reported on his investigation of Tatum's loans. The facts recited in the letter are substantially the same as the facts recited in the proof-of-loss forms filled out in February of 1986. Although the record does not disclose whether other members of the Montana Savings board of directors were aware of the contents of the letter, Tatum's loans were the subject of ongoing discussion and dissension among the board members. Letters exchanged between the Montana Savings board and the FHLBB indicate that the directors were aware of potential problems with Tatum's loans by October 12, 1984. A January 9, 1985, letter from an FHLBB examiner to Montana Savings informed board members that Tatum's loans were prohibited transactions which would probably result in losses to Montana

Savings and that, while Happ, Hall, and Kis were primarily responsible for granting the loans, Tatum was not without blame.

Aetna has met its burden by identifying the portions of the record which demonstrate that there is no genuine issue of material fact concerning the facts that were known to Montana Savings as of August 6, 1984, as to three of the losses alleged in the complaint. Those known facts are substantially the same as the facts contained in three of the proofs-of-loss upon which the complaint is based. Aetna has also identified the portions of the record which demonstrate that at least one officer of Montana Savings was aware of most of the facts recited in the other two proofs-of-loss by October 11, 1984.

Aetna having met its burden, FSLIC, as the non-moving party, must go beyond the pleadings and show that there is a genuine factual dispute for trial. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552–53. FSLIC has submitted a number of affidavits and a brief in opposition to Aetna's summary judgment motion. FSLIC argues that the non-collusive members, although aware of the facts which led to the filing of the claims under the bond, only had suspicions and never had enough information to justify filing a charge of dishonesty. FSLIC asserts that FHLBB regulators had more information than board members, and that information, combined with legal counsel from the FHLBB in Washington, led the FHLBB to contact Ron Weber about filing a bond claim in August of 1985.

The issue here is not when Montana Savings finally decided to, or was ordered to file a bond claim. The issue is when did Montana Savings become aware of facts which would cause a reasonable person to assume that a loss covered by the bond had been incurred. FSLIC has not pointed to any fact known by FSLIC or the FHLBB in August of 1985 that was not known to Montana Savings by the end of 1984. The only additional facts to which FSLIC refers were ascertained during the discovery process in the instant case and were not known prior to the filing of the proof-of-loss forms. Those additional facts are not relevant to the issue of when discovery under the terms of the bond occurred, unless FSLIC is admitting that it filed the proof-of-loss forms without actually having discovered the losses. Therefore, there is no disputed issue of fact as to when Montana Savings discovered the facts on which it later relied in completing the proof-of-loss forms. The only remaining issue is whether those facts were sufficient to cause a reasonable person to assume that a loss covered by the bond had been incurred. FSLIC has placed itself in the position of either admitting that Montana Savings discovered the losses by August and October of 1984 or that Montana Savings filed the proof-of-loss forms without good cause.

In deciding a motion for summary judgment, "the court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Electrical Service v. Pacific Electrical Contractors*, 809 F.2d 626, 631 (9th Cir.1987). The court finds that a rational jury could not find for FSLIC on the discovery issue based on the undisputed facts known to Montana Savings by August and October of 1984.

### DOMINATION ISSUE

■ FSLIC argues that directors Kis, Happ, Hall, and those in collusion with them, dominated Montana Savings and made discovery impossible prior to August 1985. Neither the Ninth Circuit nor the Montana Supreme Court has addressed the issue of when domination by wrongdoers makes discovery within the terms of a surety bond impossible. The authority cited by FSLIC, however, indicates that the discovery clause can be compared to a statute of limitations. *Admiralty Fund v. Peerless Ins. Co.*, 143 Cal.App.3d 379, 191 Cal.Rptr. 753, 757 (1983). Under Montana law, a statute of limitations may be tolled when a corporation fails to bring an action while in the control of wrongdoers. *Larry C. Iverson, Inc. v. Bouma*, 195 Mont. 351, 375, 639 P.2d 47, 60 (1981). For this tolling

to occur, however, the wrongdoers must be in actual control and they must successfully conceal the degree of wrongdoing. *Id.*

Kis and Happ resigned from the board as of February 23, 1984. There has been no allegation of wrongdoing or collusion against board members Johnson, Kohlbeck or Mortenson and FSLIC has admitted that Ron Weber was guilty of no wrongdoing. Those four board members were all present at the August 6, 1984, board meeting at which the FHLBB report detailing three of the losses was discussed. Kis and Happ were no longer in control at that point, and were unable to conceal their wrongdoing from the non-collusive board members.

Although Hall and Tatum have both been accused of wrongdoing, their relationship was far from being collusionary. Rather it was adversarial in nature. Hall and Tatum actively attempted to disclose the wrongdoing of one another to the other board members. The facts set forth by FSLIC, coupled with the undisputed background facts, are not such that a rational or reasonable jury could return a verdict in favor of FSLIC on the domination issue.

### PREJUDICE ISSUE

FSLIC asserts that even if discovery occurred prior to August of 1985, Aetna has the burden of establishing that it was substantially prejudiced by Montana Savings' failure to give timely notice of that discovery. Montana has long recognized that timely notice of discovery is a condition precedent to recovery on a surety bond when the policy contains a notice clause. *Outlook Farmers' Elevator Co. v. American Surety Co.,* 70 Mont. 8, 24, 223 P. 905, 911 (1924). Montana courts have never required the insurer to demonstrate substantial prejudice; the insured has the duty to demonstrate that all conditions set by the policy have been met. *Glacier General Assur. Co. v. State Farm,* 150 Mont. 452, 461, 436 P.2d 533, 538 (1968). Aetna is not required to demonstrate that Montana Savings' failure to provide timely notice caused Aetna substantial prejudice. Montana Savings' failure to satisfy the condi-

tions of the surety bond are dispositive in this case. Accordingly,

IT IS HEREBY ORDERED that Defendant's motion for summary judgment as to Count I is GRANTED. Plaintiff's motion for partial summary judgment and motion in limine are DENIED as moot.